101 Wn.2d 425 (1984)
679 P.2d 922
PEOPLE'S ORGANIZATION FOR WASHINGTON ENERGY RESOURCES, ET AL, Appellants,
v.
THE UTILITIES AND TRANSPORTATION COMMISSION, ET AL, Respondents.
No. 49591-2.
The Supreme Court of Washington, En Banc.
April 5, 1984.
*426 James A. Bamberger, Norman R. McNulty, Jr., and Terrence V. Sawyer of Spokane Legal Services Center, for appellants.
Kenneth O. Eikenberry, Attorney General, and Robert E. Simpson and Robert Daniel Cedarbaum, Assistants, for respondent State.
Paine, Hamblen, Coffin & Brooke, by David J. Meyer, for respondent Washington Water Power.
Douglas S. Little and Priscilla W. Derick on behalf of Puget Sound Power and Light and Pacific Power and Light, amici curiae for respondents.
BRACHTENBACH, J.
This case is a challenge to a Washington Utilities and Transportation Commission decision to grant the Washington Water Power Company (WWP) a rate increase of $20,174,000 for its electric operations. Three organizations representing low income and senior citizen ratepayers residing in WWP's service area, together with a low income, senior citizen ratepayer (appellants), contend that the Commission erred by including construction work in progress (CWIP) in WWP's rate base. The trial court upheld the Commission's decision. We reverse on the ground that RCW 80.04.250 precludes inclusion of CWIP in rate base.
On March 6, 1981, WWP filed tariff revisions designed to effect a rate increase of $21,115,000 for its electric operations. *427 Pursuant to RCW 80.04.130, the Commission suspended the proposed revisions and ordered public hearings, in which appellants were permitted to intervene.
In its presentation before the Commission, WWP argued that $48,427,000 of CWIP should be included in its rate base. This figure represented 50 percent of WWP's projected 1981 investment in Colstrip Units 3 and 4, coal-fired generating plants under construction near Colstrip, Montana, and in Washington Public Power Supply System (WPPSS) No. 3, a nuclear plant under construction in Grays Harbor County, Washington. Generally, "rate base" represents the total investment in, or fair value of, the facilities of a utility employed in providing its service. The rate base is multiplied by a percentage, called "rate of return," to arrive at the revenue which the utility may earn. 1 A. Priest, Principles of Public Utility Regulation 139 (1969). Thus, inclusion of CWIP in rate base permits a utility to earn a current cash return upon capital invested in new facilities, even though the facilities are not yet producing energy for the consumer.
The Commission, however, adopted its staff's recommendation that only $15,627,000 of CWIP, representing 100 percent of WWP's investment in Colstrip Units 3 and 4 during 1980, be included in WWP's rate base. WWP was permitted to accrue an allowance for funds used during construction (AFUDC)[1] on the remaining CWIP excluded *428 from rate base. In support of its decision, the Commission cited its conviction that "because of the magnitude of the company's present and future construction programs, the company will not be able to finance its construction projects on reasonable terms without including a portion of CWIP in rate base."
CWIP was included in WWP's rate base in yet another respect. To determine WWP's new rates, the Commission had adopted the calendar year 1980 as the "test period" during which WWP's rate base, revenues, and expenses would be evaluated. However, increased expenses and inflation can erode a rate of return established on the basis of a historic test year. The Commission's expert witness analyzed probable changes in rate base, revenue, and expenses from December 31, 1980 to November 30, 1982, and recommended an "attrition allowance" (i.e., additional rate increase) of $13,361,000. Of this amount, $10,829,000 was directly attributable to $59,722,000 of CWIP expected to be incurred on the Colstrip Units from December 31, 1980 to November 30, 1982.
The Commission adopted the recommended attrition allowance, stating that such action was necessary "in order to preserve and maintain the company's financial integrity and allow it to generate sufficient cash flow consistent with its needs for construction projects, and to attract investors at a reasonable cost".
In the hearings before the Commission, appellants insisted that any inclusion of CWIP in WWP's rate base was prohibited by RCW 80.04.250, which, they argued, limited rate base to property "used and useful" for service in Washington. The Commission rejected this argument, stating:
We have determined that the propriety of including CWIP in rate base is a matter that lies within the discretion of the Commission and is to be determined on a case-by-case basis. In effect POWER argues that RCW 80.04.250 forecloses the Commission from including any property of a regulated utility in rate base for ratemaking *429 purposes until that property either is capable of or actively rendering service to the customers of the utility. We are of the opinion that counsel's argument is not a valid interpretation of the statute and is without merit. See State ex rel. Pacific Telephone & Telegraph Company vs. Department of Public Service, 19 Wn.2d 200, 142 P.2d 498 (1943) wherein the court held that property held by a regulated utility for future use could properly be included in the company's rate base for ratemaking purposes.
On November 25, 1981, the Commission issued its decision allowing WWP a rate increase of $20,174,000 for electric operations. Appellants filed a petition for judicial review of the Commission's decision in the Superior Court for Thurston County, naming WWP and the Commission as respondents. The trial court entered a decree upholding the Commission. We accepted direct review.
RCW 80.04.250 provides in relevant part:
Valuation of public service property. The commission shall have power upon complaint or upon its own motion to ascertain and determine the fair value for rate making purposes of the property of any public service company used and useful for service in this state and shall exercise such power whenever it shall deem such valuation or determination necessary or proper under any of the provisions of this title.
(Italics ours.)
The issue which appellants pose is this: is CWIP "used and useful" for service within the meaning of RCW 80.04.250? If not, appellants contend the Commission exceeded its statutory authority by including the CWIP associated with Colstrip Units 3 and 4 in WWP's rate base.
[1, 2] The primary objective of statutory construction is to carry out the intent of the Legislature. The intent of the Legislature must be determined primarily from the language of the statute itself. Department of Transp. v. State Employees' Ins. Bd., 97 Wn.2d 454, 458, 645 P.2d 1076 (1982). Where the language of a statute is plain, free from ambiguity, and devoid of uncertainty, there is no room for construction because the meaning will be discovered from *430 the wording of the statute itself. State v. Houck, 32 Wn.2d 681, 684, 203 P.2d 693 (1949).
Relying on these principles, we turn to the statutory language at issue here. "Used" is defined as "employed in accomplishing something"; "useful" is defined as "capable of being put to use: having utility: advantageous: producing or having the power to produce good: serviceable for a beneficial end or object". Webster's Third New International Dictionary 2524 (1976). Thus, RCW 80.04.250 empowers the Commission to determine, for ratemaking purposes, the fair value of property which is employed for service in Washington and capable of being put to use for service in Washington. Obviously, an uncompleted utility plant is neither employed for service nor capable of being put to use for service; therefore, such a plant is not "used and useful" for service as required by RCW 80.04.250, and the Commission exceeded its statutory authority by including CWIP in WWP's rate base.
Our interpretation of RCW 80.04.250 is consistent with recent legislative events. In 1975, the Legislature passed Substitute House Bill 435, which would have amended RCW 80.04.250 to require the Commission to include CWIP in rate base to the extent requested by the affected utility, unless the Commission found that such inclusion was not in the public interest. The bill would also have changed the phrase "used and useful for service" to read "used or useful for service." Substitute House Bill 435, 44th Legislature (1975). However, then Governor Evans vetoed the bill as unnecessary:
From the broader perspective, however, I believe it to be very important, whenever the commission has a question before it, for the commission to have the necessary discretion to adapt and accommodate the delicate balance between utility interests and consumer interests. I also believe that all the key elements sought by proponents of the bill are within the present discretion of the commission. I have been in contact with the commission, and am certain that the commission will consider those specific elements on the appropriate occasions.
*431 (Italics ours.) Evans' Veto Message, Substitute House Bill 435, 44th Legislature, July 2, 1975.
[3] The Governor's veto message does not persuade us. Although the message claims that inclusion of CWIP in rate base is already within the Commission's discretion, the source of this alleged discretion is not identified or otherwise explained. We are more impressed by the fact that the Legislature thought it necessary to amend RCW 80.04.250 to expressly permit inclusion of CWIP in rate base. An amendment of an unambiguous statute indicates a purpose to change the law. Allen v. Department of Empl. Sec., 83 Wn.2d 145, 150, 516 P.2d 1032 (1973). RCW 80.04.250 is, and was in 1975, unambiguous with respect to its limitation of rate base to property "used and useful" for service. Accordingly, the amendment of RCW 80.04.250 to expressly permit inclusion of CWIP in rate base is an indication of a legislative purpose to change the law, which otherwise would not permit such inclusion.
Our interpretation of RCW 80.04.250 is also consistent with prior Commission policy. Until 1975, the Commission excluded CWIP from rate base. In an opinion dated September 30, 1975, shortly after Substitute House Bill 435 was vetoed, the Commission reversed itself:
The commission has not previously allowed the cost of uncompleted construction projects to be included in a company's rate bases since rate base has normally consisted of the total of plant facilities actually used to provide the service customers pay for ... We have heretofore held that customers should not pay, through rates, for plant not providing service to them ...
However, upon submission of the company's direct case, the staff of the commission determined that it has now become necessary in limited cases to transfer some of the burden of current plant financing to the present ratepayers rather than postponing the entire burden to the future until after the plant is actually in service ...
Washington Utils. & Transp. Comm'n v. Pacific Power & Light Co., 10 Pub. Util. Rep. 4th 449, 451 (1975).
Notably absent from this opinion is any discussion of *432 why the Commission suddenly had discretion to include CWIP in rate base, or why the Commission's previous policy of excluding CWIP had been wrong under the law. We conclude that the Commission erred in abandoning its previous policy and allowing inclusion of CWIP in rate base.
WWP asserts that our reading of the plain language of RCW 80.04.250 is faulty. The term "service," WWP argues, is broad enough to include providing for anticipated energy needs; therefore, CWIP is property "used and useful for service." We do not agree. True, as WWP points out, RCW 80.04.010 defines "service" as being used in its "broadest and most inclusive sense." Nevertheless, even the broadest interpretation of "service" does not include lack of service. And an uncompleted facility provides no service whatsoever.
Next, WWP relies heavily on State ex rel. Pac. Tel. & Tel. Co. v. Department of Pub. Serv., 19 Wn.2d 200, 142 P.2d 498 (1943). In Pacific Telephone, the Department of Public Service (the Commission's predecessor) appealed from a trial court order which directed it to include in the rate base of the Pacific Telephone and Telegraph Company three undeveloped parcels of real estate and an underground conduit which had been installed for future use. The Department argued that the parcels and conduit were not "used and useful" for service within the meaning of a predecessor statute virtually identical to RCW 80.04.250.[2]
Curiously, the Pacific Telephone court failed to analyze the plain language of the predecessor statute. Instead, it followed Denver Union Stock Yard Co. v. United States, 57 F.2d 735, 746-49 (D. Colo. 1932). Denver Union held that undeveloped tracts of real estate were improperly *433 excluded from rate base where they had been acquired in good faith, for the purposes of such expansion of company facilities as the directors believed to be reasonably imminent. Applying this rule, the Pacific Telephone court found that Pacific Telephone and Telegraph Company had purchased the parcels of real estate in good faith, with the reasonable expectation that they would before long be improved with buildings which would be used in the business. Similarly, the installation of the conduit for future business use was found to have been in the exercise of sound business judgment. Therefore, the Pacific Telephone court upheld the inclusion of the parcels and conduit in the rate base. Pacific Telephone, at 226-30.
Pacific Telephone is not on point. The issue in that case was whether undeveloped land was a completed conduit  property held for future use  should be included in rate base. Pacific Telephone did not decide the issue we now confront, that is, whether an uncompleted utility plant may be included in rate base while it is still under construction. Thus, it is not controlling here.
Nevertheless, WWP contends that a literal reading of RCW 80.04.250 to exclude property which is not being used to provide service from rate base is inconsistent with Pacific Telephone, which included property held for future use in rate base. We are not inclined to twist or redefine the plain language of RCW 80.04.250 in order to achieve consistency with Pacific Telephone. Instead, we question the reasoning of the Pacific Telephone court, which failed to ground its decision upon any analysis of the controlling statute. However, since the issue in the case before us is limited to whether CWIP may be included in rate base, we do not decide at this time whether the Pacific Telephone court acted properly by including property held for future use in rate base. What little rationale that case uses is not germane to our duty to decide the meaning of the statute.
In any event, Pacific Telephone does not seem to truly reflect the position of either WWP or the Commission with respect to inclusion of CWIP in rate base. WWP does not *434 contend that CWIP must be included in rate base when the Pacific Telephone conditions of good faith investment and reasonable expectation of imminent use are met. The crux of WWP's argument is that inclusion of CWIP in rate base is within the Commission's discretion, and is an appropriate regulatory response to cash flow and financing problems brought about by unprecedented construction programs. Similarly, in rejecting appellants' argument that CWIP could not be included in rate base, the Commission asserted that such inclusion was within its discretion. Moreover, its decision to include CWIP in WWP's rate base was grounded upon its belief that inclusion was necessary in order to permit WWP to continue to finance its construction projects on reasonable terms, and to preserve WWP's financial integrity.
Reviewing RCW 80.04.250 once again, we seek in vain for any indication that the Commission possesses untrammeled discretion with respect to which property may be included in rate base for ratemaking purposes. If property is not "used and useful" for service  and we have determined that CWIP is not  it may not be included in rate base. Nor do we find any indication in the statute that the financial condition of the utility is relevant in determining whether property may be included in rate base.
Whether inclusion of CWIP in rate base is an appropriate or even necessary response to the financial problems created by large construction programs is not a question which we have the power to decide. Such policy determinations must be made by the Legislature. Our role is necessarily limited to determining whether RCW 80.04.250, as it now stands, permits inclusion of CWIP in rate base. We have held that it does not.
Appellants contend that the Commission's findings of fact in support of including CWIP in rate base were legally insufficient. Since RCW 80.04.250 precludes inclusion of CWIP in rate base, this issue is moot.
Reversed and remanded to the Commission for proceedings *435 consistent with this opinion.
WILLIAMS, C.J., ROSELLINI, UTTER, DORE, DIMMICK, and PEARSON, JJ., and BEVER and CUNNINGHAM, JJ. Pro Tem., concur.
NOTES
[1] AFUDC is an accounting device. In the income statement of a utility, it offsets the carrying charges (e.g., interest) which accrue on the funds being used in the construction program. Mattutat, A Pragmatic Approach to Construction Work in Progress, 99 Pub. Util. Fort. 31, 32 (1977). AFUDC is recorded as income; however, no cash payments are made by ratepayers during construction. Payment for ratepayers to cover the carrying charges begins when the completed plant begins operation. At that time, the entire cost of the plant, including AFUDC, is added to rate base, where it earns a rate of return and is depreciated over the life of the plant. Thus, the difference between inclusion of CWIP in rate base and AFUDC accounting is one of timing: inclusion of CWIP in rate base permits the utility to recover carrying charges immediately in the form of current cash revenue, whereas AFUDC accounting postpones recovery until the new facility is completed. Practising Law Institute, Electric Power: Current Issues in Regulation and Financing 68-69 (1982).
[2] Rem. Rev. Stat. § 10441 (Supp. 1936) provided in relevant part:

The department of public works shall have power upon complaint or upon its own motion to ascertain and determine the fair value for rate making purposes of the property of any public service company used and useful for service in this state and shall exercise such power whenever it shall deem such valuation or determination necessary or proper under any of the provisions of this act.