[No. 49677-3. En Banc. November 6, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. RUTH NESLUND, *Petitioner*.

80

*Ellsworth I. Connelly* and *M. Fred Weedon,* for petitioner.

*Kenneth O. Eikenberry, Attorney General, Gregory P. Canova, Senior Assistant, Eugene H. Knapp, Jr., Prosecuting Attorney,* and *Charles Z. Silverman, Deputy,* for respondent.

BRACHTENBACH, J.—Defendant appeals from an order of the San Juan County Superior Court denying in part her motion to suppress evidence seized pursuant to two search warrants. We affirm to the extent indicated hereafter.

In February 1981, the San Juan County sheriff's office began an investigation into the disappearance of Rolf Neslund, defendant's husband. On April 13, 1981, a warrant was issued authorizing search of defendant's residence and property for evidence of first degree murder. The warrant was executed the same day. However, a 6– to 7–hour search revealed nothing.

On July 23, 1981, the San Juan County prosecuting attorney petitioned the Superior Court for San Juan County to appoint a special inquiry judge pursuant to RCW 10.27. The petition represented that the prosecuting attor-

ney had evidence of suspected criminal activity of defendant and her brother Robert Myers, who either singularly or jointly killed Rolf Neslund and disposed of his body. Judge Richard Pitt assumed the position of special inquiry judge. During the special inquiry, Judge Pitt asked some questions of witness Paul Myers, defendant's other brother. However, he did not initiate the appearance of any witnesses, ask questions of other witnesses, or discuss the investigation or testimony with anyone involved in the investigation.

On March 1, 1982, another warrant for the search of defendant's residence and property was requested. Judge Pitt issued warrant 2123 that same day. On March 2, 1982, deputies began to execute warrant 2123. While searching for weapons and ammunition, Deputy Gregory Doss saw a large number of photographs in a dresser drawer. On March 3, the deputies, realizing that the room where the murder allegedly occurred had been remodeled, looked at the photos to determine whether they showed the room as it appeared prior to the remodeling.

Warrant 2123 authorized seizure of any documents and records showing transfers of real property, moneys, and other property by or on behalf of defendant and/or Rolf Neslund. On March 3, 1982, Deputy Raymond Clever told the deputy prosecutor that while executing this portion of warrant 2123, he had found a letter from the defendant's son on "Ozone Gun & Grain" letterhead which possibly referred to the alleged murder. He also told the deputy prosecutor he had found invoices for building supplies and a couch purchased after August 8, 1980, the date of the alleged murder. The deputy prosecutor told the deputies to stop inspecting documents unless and until he obtained a further search warrant. They did so.

On March 3, 1982, Judge Pitt authorized the issuance of search warrant 2123-1. In his telephonic affidavit, the deputy prosecutor requested that testimony taken during the special inquiry judge proceeding be incorporated by reference. This testimony had not yet been reduced to writing.

On March 3, 1982, the deputy prosecutor requested an extension of time through March 8, to complete the search. On March 8, he requested a final extension through March 11. Judge Pitt granted the extensions. The search was completed on March 11, 1982.

On March 7, 1983, the State filed an information charging defendant with first degree murder. Defendant moved to suppress the evidence seized under warrants 2123 and 2123-1. The trial court held that all evidence seized pursuant to the warrants was admissible, except all documents, letters, files, records, photographic negatives, and photographs in albums. We granted defendant's motion for discretionary review.

I

Defendant first argues that Judge Pitt, as the special inquiry judge for the inquiry into the alleged murder of Rolf Neslund, was disqualified under RCW 10.27.180 from issuing search warrants 2123 and 2123-1. RCW 10.27.180 provides:

> The judge serving as a special inquiry judge shall be disqualified from acting as a magistrate or judge *in any subsequent court proceeding arising from such inquiry* except alleged contempt for neglect or refusal to appear, testify or provide evidence at such inquiry in response to an order, summons or subpoena.

(Italics ours.)

The trial court held that Judge Pitt was not disqualified under RCW 10.27.180 from issuing search warrants 2123 and 2123-1. It reasoned that the warrants had not been issued in subsequent court proceedings arising from the special inquiry judge proceeding, within the meaning of RCW 10.27.180.

The primary objective of statutory construction is to carry out the intent of the Legislature, which must be determined primarily from the language of the statute itself. *Department of Transp. v. State Employees' Ins. Bd.*, 97 Wn.2d 454, 458, 645 P.2d 1076 (1982). RCW 10.27.180 disqualifies the special inquiry judge from acting as a judge

in "any subsequent court proceeding arising from such inquiry . . .", with the exception of specified contempt proceedings. "Proceeding" has been defined as any act done by authority of a court of law. Black's Law Dictionary 1083 (5th rev. ed. 1979). However, the word "subsequent" limits the proceedings in which the special inquiry judge may not participate to those which follow the special inquiry judge proceeding in time. *Webster's Third New International Dictionary* 2278 (1971). Moreover, there is no disqualification unless the proceeding in question arose from the special inquiry judge proceeding.

■ Therefore, we hold that RCW 10.27.180 disqualifies the special inquiry judge from acting in any court proceeding which follows the special inquiry judge proceeding in time, and which arises out of the special inquiry judge proceeding, except the contempt proceedings specified in the statute. Since the special inquiry judge proceeding can be used to gather evidence of a crime only *before* the defendant has been charged with that crime, *see State v. Manning,* 86 Wn.2d 272, 543 P.2d 632 (1975), the effect of our holding is to disqualify the special inquiry judge from acting in charging and post–charging proceedings in any case which came before him on special inquiry. If proceedings arising out of the special inquiry judge proceeding are held after the special inquiry is concluded, but before the defendant is charged, the special inquiry judge will be disqualified from acting in those proceedings as well.

In this case, search warrants 2123 and 2123–1 were issued by Judge Pitt on March 1 and 3, 1982. The record shows that the special inquiry judge proceeding regarding the alleged murder of Rolf Neslund had not yet been completed at the time the warrants were issued; indeed, defendant wàs not charged with the alleged murder until March 7, 1983. Under these circumstances, warrants 2123 and 2123–1 were not issued in subsequent court proceedings arising from the inquiry, and Judge Pitt was not disqualified from issuing the warrants. We therefore affirm the trial court's holding on this issue.

II

Defendant next argues that Judge Pitt, as a special inquiry judge, was not a "neutral and detached magistrate," and therefore was barred under the federal and state constitutions from issuing warrants 2123 and 2123-1. U.S. Const. amend. 4; Const. art. 1, § 7. The trial court, relying on Judge Pitt's limited role in the special inquiry judge proceeding under RCW 10.27 and the facts of this case, held that Judge Pitt acted as a neutral and detached magistrate in issuing the warrants, as required under the federal and state constitutions.

The Fourth Amendment provides in relevant part that "no warrants shall issue, but upon probable cause . . ." U.S. Const. amend. 4. Case law interpreting the Fourth Amendment requires that the crucial determination of probable cause be made by a neutral and detached magistrate. *See, e.g., Shadwick v. Tampa,* 407 U.S. 345, 350, 32 L. Ed. 2d 783, 92 S. Ct. 2119 (1972); *Johnson v. United States,* 333 U.S. 10, 14, 92 L. Ed. 436, 68 S. Ct. 367 (1948).

Whatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from activities of law enforcement. *Shadwick,* at 350. The leading case in this regard is *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). In *Coolidge,* the Attorney General of New Hampshire, acting as a justice of the peace, issued a search warrant in a murder case which he was in charge of investigating and which he later tried as chief prosecutor. The *Coolidge* Court held that the warrant was invalid because it had not been issued by a neutral and detached magistrate. In response to the State's argument that the Attorney General had in fact acted as a neutral and detached magistrate, the Court stated:

To the first proposition it is enough to answer that there could hardly be a more appropriate setting than this for a *per se* rule of disqualification rather than a case-by-case evaluation of all the circumstances. Without disrespect to the state law enforcement agent here involved,

the whole point of the basic rule so well expressed by Mr. Justice Jackson is that prosecutors and policemen simply cannot be asked to maintain the requisite neutrality with regard to their own investigations—the "competitive enterprise" that must rightly engage their single–minded attention.

*Coolidge,* at 450.

█ The question we must resolve today is whether the *Coolidge* rule, requiring per se disqualification where the issuing magistrate is too closely affiliated with law enforcement, applies to a special inquiry judge who issues a search warrant in a case before him on special inquiry. To answer this question, we must consider the role played by the special inquiry judge. The special inquiry judge proceeding was created by the Criminal Investigatory Act of 1971, codified at RCW 10.27. It resulted from a study of the Judicial Council, which had on several occasions recommended a criminal investigatory act in somewhat different form from that finally enacted. *Manning,* 86 Wn.2d at 273. The comment which accompanied the Judicial Council's proposed draft of the criminal investigatory act described the role of the special inquiry judge:

> This added law enforcement aid is patterned after the one man grand jury law of Michigan. *However, under the statute proposed for Washington, the special inquiry judge will only sit as a judicial officer to hear and receive evidence . . .* Special inquiry judge proceedings are viewed by the Judicial Council as supplementary to a regular grand jury which has the power to actively investigate evidence of crime and corruption, a power not granted to the special inquiry judge. *The special inquiry judge does not have the power to issue indictments as does the grand jury,* but can turn over any evidence produced at the proceedings before him to any subsequent grand juries called pursuant to the statute. Thus, *although not actively particpating [sic] in an investigative role himself,* the special inquiry judge provides the prosecutor an added investigatory tool. This added tool enables the prosecutor to require a person's testimony, under oath, before a judicial officer.

(Italics ours.) Washington State Judicial Coun., *Twenty–*

*Second Biennial Report,* 17–18 (1969–70).

The provisions of RCW 10.27 are consistent with the limited role of the special inquiry judge as envisioned by the Judicial Council. In every county, a superior court judge designated by a majority of the judges must be available to serve as a special inquiry judge to hear evidence concerning criminal activity and corruption. RCW 10.27.050. The special inquiry judge does not have the power to initiate the special inquiry. Instead, any public attorney, corporation counsel or city attorney who has reason to suspect crime or corruption within his jurisdiction may petition the special inquiry judge for an order commanding persons to appear before the judge, where there is reason to believe those persons may provide material testimony or evidence concerning the suspected crime or corruption. The persons summoned must answer such questions as the special inquiry judge approves, and provide evidence as the judge directs. RCW 10.27.170. Thus, the public attorney is generally in control of the special inquiry judge proceeding, although the special inquiry judge can require the public attorney to subpoena a witness who he believes to have relevant information or knowledge. RCW 10.27.140(3). Finally, the special inquiry judge does not make the ultimate decision to prosecute, since he has no power to issue indictments. RCW 10.27.150.

The limited role of the special inquiry judge provides a basis for distinguishing two cases cited by defendant. First, defendant relies on *In re Murchison,* 349 U.S. 133, 99 L. Ed. 942, 75 S. Ct. 623 (1955). *Murchison* held that the due process requirement of an impartial tribunal was violated when a Michigan "one man grand jury" tried and convicted two witnesses on charges of contempt arising out of their conduct at the 1–man grand jury proceeding. The *Murchison* Court reasoned that the 1–man grand jury was part of the accusatory process and could not, in the very nature of things, be wholly disinterested in the conviction or acquittal of the accused. *Murchison,* at 137.

*Murchison* did not involve a determination of whether a

search warrant was issued by a neutral and detached magistrate; therefore, it is not on point. Moreover, even though the Michigan 1-man grand jury served as the model for our special inquiry judge, Washington State Judicial Coun., *Twenty-Second Biennial Report* 18, significant differences between the two make *Murchison* unpersuasive here. The 1-man grand jury may require any person to appear as a witness and answer questions. Mich. Stat. Ann. § 28.943. Once he has determined there is probable cause to suspect a person of committing an offense, the 1-man grand jury may cause the apprehension of that person and initiate criminal proceedings. Mich. Stat. Ann. § 28.944. In short, the judge who serves as the 1-man grand jury, unlike the special inquiry judge, is in control of the investigation. *See In re Recount,* 270 Mich. 328, 331, 258 N.W. 776 (1935). Thus, even if the 1-man grand jury, by virtue of his active role in investigating and prosecuting crime, would fail to qualify as a neutral and detached magistrate, we would not come to the same conclusion regarding the special inquiry judge, who is not an active participant in the investigation of crime.

Second, defendant relies on *United States v. Defalco,* 509 F. Supp. 127 (S.D. Fla. 1981). In *Defalco,* a grand jury returned an indictment charging 45 defendants with one count of conspiracy to commit interstate transportation of obscene materials, listing as obscene approximately 100 films and 30 magazines. United States magistrates then issued search warrants for evidence of obscene materials and of the conspiracy to transport them, relying upon the grand jury's indictment to supply the requisite probable cause. The *Defalco* court held that the evidence seized pursuant to the warrants must be suppressed. The indictment could not supply probable cause, the court reasoned, because the grand jury was under the control of the prosecutor, and was not the neutral and detached magistrate required by the constitution. *Defalco,* at 138.

A special inquiry judge, unlike a grand jury, does not actively investigate criminal activity and does not issue

indictments. Thus, the special inquiry judge is not closely allied with the prosecutor in the same way a grand jury might be. We find *Defalco* distinguishable.

Based upon the foregoing analysis, we conclude that the special inquiry judge is sufficiently severed and disengaged from law enforcement activities to qualify as a neutral and detached magistrate, even with respect to those cases before him on special inquiry. Accordingly, we hold that Judge Pitt, as a special inquiry judge, was not per se disqualified under either the Fourth Amendment or Const. art. 1, § 7, from issuing search warrants 2123 and 2123–1.

Our determination that a special inquiry judge may qualify as a neutral and detached magistrate, however, does not end our analysis. Even where a person is not per se disqualified from issuing a warrant, his conduct under the facts of a particular case may cause him to lose his status as a neutral and detached magistrate. Such was the case in *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 60 L. Ed. 2d 920, 99 S. Ct. 2319 (1979), which held that a judge who accompanied police on a raid of a pornographic bookstore, where he reviewed material for obscenity and added it to a previously signed search warrant, had not manifested the neutrality and detachment required of a judicial officer.

Defendant alleges that Judge Pitt's conduct during the special inquiry disqualifies him as a neutral and detached magistrate. However, she cites no facts in support of her contention that Judge Pitt was an active member of the investigation into the alleged murder of Rolf Neslund. Indeed, the record leads us to the opposite conclusion. An unchallenged finding of fact states that Judge Pitt did not initiate the appearance of any witnesses, briefly questioned only one witness, and did not discuss the investigation with anyone involved. Under these circumstances, we hold that Judge Pitt was neutral and detached in fact, and his issuance of search warrants 2123 and 2123–1 valid under the federal and state constitutions.

Affirmed to the extent noted above.

WILLIAMS, C.J., and UTTER, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.

ROSELLINI, J. (dissenting)—There is no question that the validity of a search warrant requires its issuance by a neutral and detached magistrate, and neutrality and detachment require severance and disengagement from law enforcement. *Shadwick v. Tampa*, 407 U.S. 345, 350, 32 L. Ed. 2d 783, 92 S. Ct. 2119 (1972). A judge who is sitting as a special inquiry judge is not a neutral and detached magistrate because that role is aligned with the prosecutor's. A special inquiry judge is both statutorily disqualified and precluded by due process from issuing search warrants. I therefore dissent to the majority's resolution of this issue.

### STATUTORY DISQUALIFICATION

A judge who has been or is acting as a special inquiry judge is statutorily disqualified from acting in any other capacity than in the case under inquiry. RCW 10.27.180 provides:

> The judge serving as a special inquiry judge shall be disqualified from acting as a magistrate or a judge in any subsequent court proceeding arising from such inquiry[,]

except for specified contempt situations. The majority's efforts to provide dictionary definitions to certain words in the statute fail to answer the only relevant question about the meaning of the disqualification provision: Upon what event is the special inquiry judge disqualified to act in subsequent proceedings? To the extent that the statute does not explicitly provide the answer, it is ambiguous. Our enunciated rules of statutory construction compel our resolution of the Legislature's intent that the appointment of the special inquiry judge, not the termination of the special inquiry proceedings, disqualifies that judge in regard to subsequent proceedings.

"Subsequent" is defined as "following in time: coming or being later than something else". *Webster's Third New*

*International Dictionary* 2278 (1971). The question for us is not the meaning of "subsequent", but rather what is the something else after which the special inquiry judge is disqualified. There is no support for the majority's assumption that the something else is the conclusion of the special inquiry proceedings.

When the words in a statute, given their plain, ordinary meaning, are unambiguous, the court may not construe the words otherwise. *People's Org. for Wash. Energy Resources v. Utilities & Transp. Comm'n,* 101 Wn.2d 425, 679 P.2d 922 (1984). But, when a statute is ambiguous, it must be interpreted in a reasonable manner and in accordance with the apparent intent of the Legislature. *Human Rights Comm'n v. Cheney Sch. Dist. 30,* 97 Wn.2d 118, 641 P.2d 163 (1982). The court should look primarily to the language of the statute itself to determine legislative intent. *Department of Transp. v. State Employees' Ins. Bd.,* 97 Wn.2d 454, 645 P.2d 1076 (1982). The court must construe the act as a whole giving effect to all the language used. *Burlington N., Inc. v. Johnston,* 89 Wn.2d 321, 572 P.2d 1085 (1977).

RCW 10.27.180 disqualifies the "judge *serving* as a special inquiry judge". (Italics mine.) By qualifying the special inquiry judge thusly, rather than in a form indicating a judge whose services as a special inquiry judge have terminated, the Legislature has indicated it meant a presently serving judge. Had the Legislature intended to disqualify a judge who had previously served as a special inquiry judge, it would have said so. *See Jepson v. Department of Labor & Indus.,* 89 Wn.2d 394, 573 P.2d 10 (1977). The language of the statute indicates the Legislature's intent.

Examining RCW 10.27 as a whole, it is apparent that the Legislature did not intend the special inquiry judge to issue warrants. The actions that the special inquiry judge may take are limited by the statute. On petition of the public attorney, the special inquiry judge shall command persons to appear and answer questions as the special inquiry judge may approve, and shall direct production of evidence. RCW 10.27.170. On a belief that persons may have knowledge

concerning the subject under investigation, the special inquiry judge may cause those persons to be called. RCW 10.27.140(3). The statute provides no explicit authority for the special inquiry judge to issue search warrants.

There is significance in the Legislature's failure to provide the special inquiry judge with the authority to issue search warrants. The purpose of the Criminal Investigatory Act of 1971 is "to serve law enforcement in combating crime and corruption." RCW 10.27.010. The majority apparently believes that the issuance of search warrants by the special inquiry judge would further this purpose. Nevertheless, the court is not permitted to add words to a statute. *See Vita Food Prods., Inc. v. State,* 91 Wn.2d 132, 134, 587 P.2d 535 (1978). The Legislature withheld from the special inquiry judge the authority to issue search warrants, and this court cannot supply that authority.

In addition to examining the words of a statute, we must construe the statute in a reasonable manner. *Human Rights Comm'n v. Cheney Sch. Dist. 30, supra.* We must avoid meaningless, arbitrary distinctions. *Bellevue Fire Fighters Local 1604 v. Bellevue,* 100 Wn.2d 748, 675 P.2d 592 (1984). Whatever the Legislature's motive for disqualifying a special inquiry judge from acting in any other capacity on the case under inquiry, it is unreasonable to suggest the disqualifying factors arise at the termination of the inquiry and not at its inception. The facts of this case illustrate the absurdity of such a conclusion. Judge Pitt was appointed special inquiry judge in July 1981. In March 1983, the State filed the information which terminated the special inquiry proceedings. *See State v. Manning,* 86 Wn.2d 272, 543 P.2d 632 (1975). In the nearly 2 years in which the special inquiry was ongoing, the majority's construction would permit Judge Pitt to issue warrants up to March 6, 1983, but would disqualify him as of March 7. If the nature of the special inquiry proceeding disqualifies the special inquiry judge from acting in any subsequent proceeding, that disqualification arises upon the judge's appointment.

## DUE PROCESS

In addition to the statutory disqualification of the special inquiry judge, due process considerations also prevent the special inquiry judge from issuing search warrants.

The Fourth Amendment requires that the issuing magistrate be neutral and detached. *State v. Porter,* 88 Wn.2d 512, 515, 563 P.2d 829 (1977). "Whatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from activities of law enforcement." *Shadwick v. Tampa,* 407 U.S. 345, 350, 32 L. Ed. 2d 783, 92 S. Ct. 2119 (1972). The nature of the appointment of the special inquiry judge and the statutory authority of the office negate neutrality and detachment because the special inquiry judge has become a participant in the activities of law enforcement.

That the special inquiry judge is affiliated with the law enforcement branch of the government is apparent in several regards. First, the very purpose of the Criminal Investigatory Act of 1971 which established the special inquiry judge is "to serve law enforcement in combating crime and corruption." RCW 10.27.010.

Second, this court has recognized that the Washington special inquiry statute is patterned after the 1–man grand jury law of Michigan. *State v. Manning, supra* at 274. There, we stated that the statute provides for a procedure to investigate crime or corruption with a view toward causing a criminal prosecution. *See also State v. Madry,* 8 Wn. App. 61, 504 P.2d 1156 (1972).

Thus, the very purpose of the proceeding inevitably associates the special inquiry judge with law enforcement. Because of the close association to law enforcement, and the similarity to the 1–man grand jury, the reasoning of *United States v. Defalco,* 509 F. Supp. 127 (S.D. Fla. 1981) is applicable here. In *Defalco,* a grand jury returned an indictment charging 45 defendants with one count of conspiracy to commit interstate transportation of obscene materials, and listing as obscene approximately 100 films and 30 magazines. United States magistrates then issued

search warrants for evidence of obscene materials and the conspiracy to transport them, relying upon the grand jury's indictment to supply the requisite probable cause. The *Defalco* court held that, since the grand jury was not the neutral and detached magistrate required by the constitution, the evidence seized pursuant to the warrants must be suppressed:

> With regard to the role of the grand jury, the Court finds that while, in an ideal sense, a grand jury is supposed to be a body independent of any of the three branches of the government, the reality is, and the courts have recognized, that grand juries are under the control of the prosecutor.

(Citations omitted.) *Defalco,* at 138.

Similarly, while members of the judiciary are supposed to be independent of law enforcement, the reality is that the special inquiry judge is a major participant in an investigatory process which is specifically designed as an aid to law enforcement. As pointed out in *Hawkins v. State,* 130 Ga. App. 426, 427, 203 S.E.2d 622 (1973), there is no way that a person can investigate a criminal case and then attempt to review his own investigation with neutrality and impartiality.

The majority attempts to justify its position by implying that the special inquiry judge plays a passive role in the investigatory process. The majority distinguishes the function of the inquiry judge from that of a grand jury by pointing out that the inquiry judge cannot issue indictments.

The inability to issue indictments is not a criterion which implies neutrality and detachment. The investigating police officers also are not entitled to issue indictments. However, no one would attempt to say that they maintain the neutrality and detachment necessary to issue search warrants.

The inquiry judge actively participates and assists the prosecutor in accumulating information relevant to a criminal investigation. The judge who serves as the investigatory tool of the prosecution has been exposed to rumor, innu-

endo and unfounded testimony from inquiry witnesses. He cannot be expected to disregard his impressions and opinions compiled in the course of the investigatory role and become the neutral and detached judicial officer required for performing subsequent judicial acts in the same case.

The majority notes that the deputy prosecutor, in his request for an additional warrant on March 3, 1982, asked the special inquiry judge to incorporate by reference prior proceedings before him. Majority opinion, at 81. The judge's knowledge, necessarily outside the affidavits in support of the search warrants, negated neutrality and detachment.

That the special inquiry is generally under the control of the prosecutor rather than the special inquiry judge detracts from the majority's position. The special inquiry judge sits at the behest of the prosecutor, and enforces the prosecutor's requests for production of witnesses and other evidence. As an investigatory tool of the prosecutor, the special inquiry judge is necessarily aligned with the prosecutor during the course of the investigation. The special inquiry proceeding is an activity of law enforcement.

In its holding that due process prohibits the 1–man grand jury from sitting as the judge in a proceeding for contempt occurring in an earlier grand jury proceeding, the United States Supreme Court discussed the relationship of impartiality to our system of justice. *In re Murchison,* 349 U.S. 133, 99 L. Ed. 942, 75 S. Ct. 623 (1955). The Court said, "Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness." *Murchison,* at 136. The Court further stated,

A single "judge–grand jury" is even more a part of the accusatory process than an ordinary lay grand juror. Having been a part of that process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused. While he would not likely have all the zeal of a prosecutor, it can certainly not be said that he would have none of that zeal.

*Murchison,* at 137.

If one were to disregard the statutory disqualification, a per se disqualification of a special inquiry judge is warranted. As the majority points out, Judge Pitt's active participation in the investigation appears from the record to be minimal. Nevertheless, a case–by–case approach can serve only to delay proceedings by requiring defendants to challenge any evidence seized under a warrant issued by a special inquiry judge.

> [T]here is much to be said for the proposition that any effort to assess the neutrality of a law enforcement official . . . would "involve the lower courts in a complicated fact–finding process which is better avoided by a prophylactic rule."

2 W. LaFave, *Search and Seizure* § 4.2(a), at 32 (1978).

It is probable that the Legislature in enacting RCW 10.27.180 which disqualifies the special inquiry judge from issuing warrants, believed either that a per se disqualification better serves judicial efficiency than a case–by–case determination of neutrality and detachment, or that the very appointment as a special inquiry judge precluded neutrality and detachment in all circumstances. Whatever the Legislature's motives, the special inquiry judge is disqualified by statute and because his role does not meet the due process requirement of neutrality and detachment. The warrants issued by the special inquiry judge should be quashed.

CUNNINGHAM, J. Pro Tem., concurs with ROSELLINI, J.

Reconsideration denied December 13, 1984.