[No. 51942-1. En Banc. June 12, 1986.]

DON M. CLARK, ET AL, *Appellants*, v. THE HORSE RACING COMMISSION, ET AL, *Respondents*.

*Williams, Lanza, Kastner & Gibbs,* by *Randy J. Aliment* and *Joseph J. Lanza,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Larry Watters, Assistant,* for respondents.

PEARSON, J.—The primary issue in this case is whether the Washington Horse Racing Commission validly promulgated an amendment to WAC 260–70–100, which prohibited horse owners from participating in purse distribution in the event their horses were found to be in violation of the permitted medication standards. We hold the Commission failed to comply with the format and style provisions for amending existing sections under RCW 34.04.058(1), (3).

On August 18, 1982, a horse owned by Don Clark, named "Lady Barrydown", was disqualified as winner of the eighth race at Longacres Race Track. On October 2, 1982, a horse owned by Loto Can, Inc., named "Loto Canada", also was disqualified. "Loto Canada" had finished third in the ninth race at Longacres. Urine samples taken from both horses after their respective races revealed the presence of two nonsteroidal anti–inflammatory drugs (NSAIDS), Naproxen and phenylbutazone. The Board of Stewards (Stewards) at Longacres found the presence of the drugs to be in direct violation of WAC 260–70–021(6), which states:

> Approved nonsteroidal anti–inflammatory drugs (NS AIDS) may be administered to a horse, but not on race day. No more than one of the NSAIDS may be used on or carried in a horse's body at any one time.

The Stewards, in accordance with the penalty provisions for misuse of permitted medication standards under WAC 260–70–100,[1] withheld purse money and other awards

---

[1]The penalty provision of WAC 260–70–100, in effect at the time of the Stewards' disqualification, provided:

"If laboratory analysis of urine or blood taken from a horse shows misuse of permitted medication . . . *the owner of such horse shall not participate in the purse distribution of the race wherein the violation occurred, and shall be denied or shall promptly return any portion of the purse,* or sweepstakes, and any trophy in such race and the same shall be distributed as in the case of a disqualification." (Italics ours.) This provision was repealed in 1983. State Register 83–19–054 (1983).

totaling $5,262.70 from Don Clark and $3,828.36 from Loto Can, Inc. The owners subsequently appealed the Stewards' rulings to the Washington Horse Racing Commission.

The Commission conducted a full de novo hearing on April 11, 1983. At the Commission hearing, the two appeals were consolidated due to the similarity of issues. During the Commission hearing, the owners presented no testimony or evidence to rebut the Stewards' ruling which found the horses had been raced in violation of the permitted medication standards. Instead, the owners argued that the provision of WAC 260–70–100, which prohibited owners from participating in purse distribution, was promulgated in violation of the notice, comment and format provisions of the administrative procedure act under RCW 34.04.010 *et seq.* On June 24, 1983, the Commission concluded as a matter of law that WAC 260–70–100, including the provision which prohibited owner participation in purse distribution, was validly promulgated. The Commission's ruling was affirmed by the Thurston County Superior Court. The owners then appealed to the Court of Appeals, which certified the matter to this court.

I

The Washington Horse Racing Commission constitutes an "agency" under state law and is subject to the administrative procedure act. *See* RCW 34.04.010(1).

Because this matter came before the Commission as an administrative adjudication, judicial review of the Commission's ruling is governed by RCW 34.04.130(6), which provides:

The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

(f) arbitrary or capricious.

Additionally, our review of an administrative decision is based upon the record of the administrative tribunal, not that of the superior court. *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 324, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983).

The facts of this case are basically undisputed. Accordingly, the issue of whether the Commission validly promulgated an amendment to WAC 260–70–100, in compliance with the notice, comment and format provisions of the administrative procedure act, is a pure question of law. Questions of law are reviewed under the "error of law" standard of RCW 34.04.130(6)(d). *Sellers,* at 325. This standard "allows the reviewing court to essentially substitute its judgment for that of the administrative body, though substantial weight is accorded the agency's view of the law." *Sellers,* at 325. With this standard in mind, we proceed to the question before us.

## II

On November 30, 1981, the Commission sent notice to all interested persons of an intended amendment to WAC 260–70–100 and set a hearing date for January 15, 1982.[2] The specific notice sent to all interested parties included a cover page which listed the agenda for the meeting. This agenda referred only to "Amending WAC 260–70–100, relating to penalties for misuse of permitted medication." The next page of the notice included the name of the issuing agency

---

[2]This notice and hearing were made necessary by a challenge to WAC 260–70–100 in Hawley v. Washington Horse Racing Commission, King County cause 82–2–05336–8 (Oct. 13, 1982). Subsequently, on October 13, 1982, the court invalidated an April 25, 1980 amendment to WAC 260–70–100, which contained the same provision that is at issue in the present case, on the ground the Commission failed to comply with the notice and comment provisions under RCW 34.04.010 *et. seq.* No appeal was taken from this ruling.

and reference to the specific provision the agency was "intend[ing] to adopt, amend, or repeal". The specific provision referenced merely stated, "Amending WAC 260–70–021, relating to medication standards; and WAC 260–70–100, relating to penalties for misuse of permitted medication." No other provision specifically stated that the Commission intended to amend that portion of WAC 260–70–100 relating to loss of owner purse money. Attached to the last page of the notice was the entire text of both WAC 260–70–021 and WAC 260–70–100, including the provision relating to loss of purse money.[3] However, the only underscored and deleted portions of the notice dealt with the use of the drug Lasix, a provision only tangentially related to the loss of purse money.

The owners contend the November 30, 1981 notice of intended amendment to WAC 260–70–100 and the January 15, 1982 hearing did not comply with the rulemaking pro-

---

[3]The pertinent portion of the notice sent to all interested parties is set forth below:

"AMENDATORY SECTION (Amending Order 79–03, filed 5/7/80)

"WAC 260–70–100 Penalties Relating to Misuse of Permitted Medication. Should the laboratory analysis of urine or blood taken from a horse, other than a two–year old, show the presence of more than one approved nonsteroidal anti-inflammatory drug (NSAID) in violation of WAC 260–70–021, or the presence of phenylbutazone in excess of the quantities authorized by WAC 260–70–090 the stewards shall levy the following penalties against each person found responsible:

"(1) For a first offense within any calendar year, a fine of $200;

"(2) The second offense, within any calendar year, $500;

"(3) For a third offense, within any calendar year, license suspension for one year.

"If laboratory analysis of urine or blood taken from a horse shows misuse of permitted medication as specified above the owner of such horse shall not participate in the purse distribution of the race wherein the violation occurred, and shall be denied or shall promptly return any portion of the purse, or sweepstakes, and any trophy in such race and the same shall be distributed as in the case of a disqualification.

"If any NSAID or other permitted medication is found in the body of a horse which alone or in combination with a second ((NSAID)) medication is of such a quantity so as to interfere with the testing process the penalties for use of a prohibited drug or medication shall apply irrespective of the provisions of this rule. The finding of any diuretic, including Lasix (furosemide), in the body of a horse shall constitute the presence of an interfering substance and the penalties for use of a prohibited drug or medication shall apply."

cedures under the notice and comment provisions of RCW 34.04.025(1)(a), (b), (2), (5), and the format and style provisions of RCW 34.04.058(1), (3). In particular, the owners argue that the Commission failed to underline the amendatory sections of WAC 260–70–100 (penalties for misuse of permitted medication standards) which related to the prohibition of owner participation in purse distribution. The determinative issue in this case is whether the Commission complied with the mandatory underlining provision under RCW 34.04.058(1) when it intended to amend WAC 260–70–100 to include the prohibition of owner participation in purse distribution.

Prior to the amendment of a rule, an administrative agency must give all interested parties notice and the opportunity to submit pertinent information. RCW 34.04-.025(1)(a), (b). Further, an amendment is invalid unless adopted in *substantial compliance* with notice and comment provisions. RCW 34.04.025(5). Additionally, the administrative procedure act requires an agency, when amending an existing section of the administrative code, to comply with the format and style provisions under RCW 34.04.058(1), which provides, in pertinent part:

> Rules promulgated by an agency pursuant to RCW 34.04.025 . . . which amend existing sections of the administrative code *shall have the words which are amendatory to such existing sections underlined. . . .* No rule may be forwarded by any agency to the code reviser, nor may the code reviser accept for filing any rule unless the format of such rule is in compliance with the provisions of this section.

(Italics ours.) The failure to underline these sections results in the subject of the paragraph being ineffectual. RCW 34.04.058(3). RCW 34.04.058(3) states in pertinent part:

> Any addition to or deleting from an existing code section not filed by the agency in the style prescribed by subsection (1) of this section shall in all respects be ineffectual, and shall not be shown in subsequent publications or codifications of that section . . .

Unlike RCW 34.04.025(1)(a), (b), which require substan-

tial compliance, RCW 34.04.058(1) does not contain substantial compliance language. On the contrary, RCW 34-.04.058(1) mandates strict compliance. RCW 34.04.058(1) states that "[r]ules promulgated by an agency pursuant to RCW 34.04.025 . . . which amend existing sections of the administrative code *shall have the words which are amendatory* to such existing sections *underlined.*" (Italics ours.)

As a general rule, the primary goal of statutory construction is to implement the intent of the Legislature. The intent of the Legislature must be derived from the language of the statute itself, *People's Org. for Wash. Energy Resources v. Utilities & Transp. Comm'n,* 101 Wn.2d 425, 429, 679 P.2d 922 (1984), together with constructions placed upon the statute by this court. *Stewart Carpet Serv., Inc. v. Contractors Bonding & Ins. Co.,* 105 Wn.2d 353, 359, 715 P.2d 115 (1986). However, this court will not engage in judicial construction of the language of a statute where the language is plain, unambiguous and certain, because its meaning will be discovered from the wording of the statute itself. *People's,* at 429–30.

Applying these basic principles of statutory construction, we now turn to the statutory language at issue before us. The word "shall" clearly is unambiguous and presumptively creates an imperative obligation, *Crown Cascade, Inc. v. O'Neal,* 100 Wn.2d 256, 261, 668 P.2d 585 (1983), unless a different legislative intent can be discerned. *In re Myers,* 105 Wn.2d 257, 262, 714 P.2d 303 (1986). A review of the limited legislative history of Substitute Senate Bill 2130, 45th Legislature (1977) does not manifest such a contrary intent. Thus, the use of the word "shall" in RCW 34.04.058(1) requires an administrative agency to underline an intended amendment of an existing section in the administrative code when filing notice with the code reviser for publication in the state register, *and when the notice is mailed to all persons who have made timely request of the agency for advance notice of its rulemaking proceedings. See* RCW 34.04.025(1)(a).

The record unequivocally demonstrates that the amen-

datory sections in question were not underlined at the time notice was sent to the interested parties, or when notice was filed with the code reviser. Therefore, the intended amendment to WAC 260–70–100 did not comply with RCW 34.04.058(1). The Commission, relying on *Somer v. Woodhouse,* 28 Wn. App. 262, 623 P.2d 1164 (1981), argues that the failure to underline amendatory sections does not constitute grounds for invalidating the rule. In *Somer,* a business sought to have a WAC rule regarding options declared invalid for failure to issue a sufficient statement of purpose and a statement of reasons for and against adoption. In upholding the validity of the rule, the Court of Appeals stated that courts "do not function to strike down agency action because of merely formal or technical flaws." *Somer,* at 272. The Commission argues that failure to underline was merely a technical flaw. We disagree. *Somer* is distinguishable from the facts before us in that *Somer* involved an interpretation pursuant to RCW 34.04.045 and RCW 34.04.025(1)(b), which requires substantial compliance. Here, the underlining of amendatory sections pursuant to RCW 34.04.058(1) requires *strict compliance,* not merely substantial compliance. Accordingly, the subject of the paragraph which related to the prohibition of owner participation in purse distribution was ineffectual at the time "Lady Barrydown" and "Loto Canada" were disqualified for misuse of permitted medication standards. Therefore, the Commission wrongfully withheld the owners' purse money.

## III

The owners request an award of attorney fees for pursuing this appeal. Generally, attorney fees are recoverable only if specifically authorized by statute, by agreement of the parties, or upon a recognized equitable ground. *Crane Towing, Inc. v. Gorton,* 89 Wn.2d 161, 176, 570 P.2d 428, 97 A.L.R.3d 482 (1977). The facts before us clearly show there was no agreement between the parties relating to attorney fees.

The owners argue they are entitled to attorney fees under either RCW 4.84.030 or RCW 4.84.250. This court, however, has not awarded attorney fees on an administrative appeal where there is no statutory authority. *Pennsylvania Life Ins. Co. v. Department of Empl. Sec.,* 97 Wn.2d 412, 645 P.2d 693 (1982). In *Pennsylvania Life,* we rejected a claim for attorney fees at the trial court for a party who successfully prevailed on an administrative appeal. Justice Rosellini, writing for the majority, stated:

> *Under RCW 34.04.130 the only authority of the court in granting relief is to affirm the decision of the agency, reverse it, or remand it for further proceedings.* Unless a party can show that he is entitled to attorney fees under the law which gives the right of review . . . *there is no authority in the court to award such fees pursuant to equitable or other doctrines.*

(Italics ours.) *Pennsylvania Life,* at 417. In this case, the law which authorizes review is RCW 34.04.130, and it clearly does not provide for the award of attorney fees. Accordingly, the owners' request for attorney fees based on statutory grounds is denied.

The owners also argue they are entitled to attorney fees on the ground the Commission acted in bad faith. The owners' bad faith argument is based on *State ex rel. Macri v. Bremerton,* 8 Wn.2d 93, 111 P.2d 612 (1941). In *Macri,* this court first indicated that fees might be awarded depending upon "the justice of the cause or the facts and circumstances of the particular case." *Macri,* at 113 (quoting 14 Am. Jur. *Costs* § 22, at 16 (1938)). Subsequently, we relied upon this language for the proposition that fees *could be awarded* if the prevailing party proved the opposing party acted in bad faith. *See PUD 1 v. Kottsick,* 86 Wn.2d 388, 390, 545 P.2d 1 (1976); *Hsu Ying Li v. Tang,* 87 Wn.2d 796, 798, 557 P.2d 342 (1976); *ASARCO, Inc. v. Air Quality Coalition,* 92 Wn.2d 685, 716, 601 P.2d 501 (1979). The record before us does not establish the Commission acted in bad faith. Accordingly, the owners' request for attorney fees based on bad faith is denied.

We reverse and remand to the Commission for further proceedings consistent with this opinion.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, ANDERSEN, CALLOW, and DURHAM, JJ., concur.

DORE, J. (dissenting)—The majority limits its consideration to the facts surrounding the January 1982 amendment to WAC 260–70–100 and concludes that:

> The record unequivocally demonstrates that the amendatory sections in question were not underlined at the time notice was sent to the interested parties, or when notice was filed with the code reviser. Therefore, the intended amendment to WAC 260–70–100 did not comply with RCW 34.04.058(1).

Majority opinion, at 91–92. I believe, however, that a more thorough analysis of the events leading up to the 1982 amendment shows that the Horse Racing Commission had complied with these provisions, and that therefore, the January 1982 amendment was valid. Accordingly, I would affirm the trial court's decision upholding forfeiture of the purse money pursuant to WAC 260–70–100. My decision is based on an analogy between the facts of this case, and the doctrine we have always followed in this state, the *enrolled bill doctrine*.

WAC 260–70–100 deals with the penalties for improper drug use in horse races. In 1980, the Horse Racing Commission amended this provision to include a purse for–feiture sanction. Although this 1980 amendment was challenged, and King County Superior Court ruled that it did not meet the notice requirements of RCW 34.04.025 or the underlining provisions of RCW 34.04.058(1), the code reviser nevertheless accepted the erroneous amendment and published it in the Washington State Register. The State Register did not state that this amendment was ineffectual, despite the clear requirement in RCW 34.04.058(3) mandating such a description. Therefore, people consulting the Washington Administrative Code after 1980 would conclude the purse forfeiture provision was valid. Furthermore,

any underlining of that forfeiture would appear deceptive and misleading, because at the time of amendment in 1982, the forfeiture provision appeared to be a duly enacted regulation.

Therefore, in January 1982, before any declaration of the invalidity of the 1980 amendment, the Horse Racing Commission had no alternative concerning underlining when it decided to revise WAC 260–70–100 to add another prohibited drug. It had to leave the 1980 amendment without underlining, and underline only that section pertaining to a *new* prohibited drug, because the State Register, rightly or wrongly, indicated that the 1980 amendment was a duly enacted, valid rule.

The rationale for this can be best seen by comparing this situation to the enrolled bill doctrine. This doctrine provides that a duly signed enrolled bill appearing on file in the Secretary of State's office is *conclusive* evidence that the bill was properly enacted in accordance with the procedures established for valid legislation. *State ex rel. Reed v. Jones,* 6 Wash. 452, 34 P. 201 (1893); *Citizens Coun. Against Crime v. Bjork,* 84 Wn.2d 891, 529 P.2d 1072 (1975). One reason for this doctrine is that the public must be able to rely on the statutes appearing in the Secretary of State's office as the properly enacted laws. To do otherwise "would render it absolutely impossible for the average citizen to ascertain that of which he must at his peril take notice." *Bjork,* at 897 n.1.

This same reasoning applies to the rules made pursuant to RCW 34.04.010 *et seq.* While the more informal nature of administrative rulemaking allows for challenges to the procedure by which a rule is enacted, the public must still be able to rely on the provisions printed in the State Register. When revising a code section, it would be deceptive and misleading to underline sections of the rule which already appear as duly enacted in the State Register. While I believe these rules appearing in the State Register can be challenged for improper notice or other such reasons, I do not believe a subsequent amendment of a rule appearing in

the State Register can be challenged for procedural errors arising from earlier revisions.

Accordingly, I would hold that WAC 260–70–100 did not violate RCW 34.04.058(1). The 1980 amendment including purse forfeiture already appeared in the State Register, and therefore, the 1982 amendment should not have had the 1980 revision underlined.

I would affirm the trial court's order declaring the purse forfeiture valid.

GOODLOE, J., concurs with DORE, J.