# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 69226-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| MICHAEL J. REEDER, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 23, 2014 |
| | ) | |

LEACH, J. — Michael Reeder appeals his conviction for 14 counts of securities fraud and 14 counts of theft in the first degree. He challenges the trial court's denial of his motions to appoint new counsel, to suppress evidence obtained with a special inquiry judge subpoena, and to dismiss some or all of the State's charges as barred by the statute of limitations. He also claims that his sentence for multiple counts of the same crimes violated the prohibition against double jeopardy. Because Reeder fails to show that his attorney had a conflict of interest, that the challenged subpoena violated his constitutional rights, or that the statute of limitations expired before the State filed criminal charges against him and because he was not subject to double jeopardy where each count was based on a discrete, fraudulent transaction, we affirm.

FACTS

William McAllister, a Seattle resident, met Reeder through a company that provided nonbank real estate financing. Between March 2006 and June 2007, McAllister made a series of payments to Reeder for two real estate investments.

Reeder first told McAllister that he had an option to purchase two parcels of land in Lake Stevens, Washington. Reeder and McAllister formed a limited liability company and opened a bank account for the purpose of buying these two parcels of land. McAllister wired $200,000 to Reeder on May 26, 2006, and wrote a check to Reeder for $150,000 on June 16, 2006, to use for the down payment. Reeder and McAllister signed an agreement documenting these loans, which stated that Reeder had already entered into purchase and sale agreements for the properties. Reeder never purchased the land in Lake Stevens, nor did he return the $350,000 to McAllister.

On March 7, 2006, Reeder told McAllister that he had an opportunity to purchase property in Bellevue for $1.4 million. Reeder showed McAllister a fraudulent purchase and sale agreement and quitclaim deed for the property, as well as an appraisal report stating that the property was worth $2 million. At the time, Reeder knew that the owners did not want to sell the property. Based upon Reeder's representations, McAllister made a series of payments to Reeder totaling $1.4 million to use for its purchase. Reeder provided promissory notes

for many, but not all, of these payments. The promissory notes indicated that the loans were "exclusively for business and commercial purposes and not for personal use." Reeder never purchased the property and did not use any of the funds to buy the property. He did not return McAllister's money.[1]

The State obtained Reeder's bank and credit card records with subpoenas issued by a special inquiry judge under RCW 10.27.170. These records showed that McAllister made payments to Reeder totaling $1,725,700. The bank and credit card records also showed that Reeder withdrew McAllister's money in cash or used it to purchase cashier's checks payable to Reeder. He used the funds in casinos and for personal expenses.

On April 8, 2011, the State charged Reeder by information with 14 counts of securities fraud and 15 counts of first degree theft by deception based upon the 15 separate payments that McAllister provided. The State filed an amended information on June 15, 2012.

Before trial, Reeder moved to substitute counsel based on an alleged conflict of interest. The court denied this motion.

Before trial, Reeder also moved to suppress evidence obtained with the special inquiry judge subpoenas. He also moved to dismiss the securities fraud

---

[1] On May 12, 2009, McAllister obtained a judgment against Reeder for $2,832,370.52. McAllister v. Reeder, No. 08-2-00063-2 (Skagit County Super. Ct., Wash. May 12, 2009).

counts, alleging that the statute of limitations barred these charges. The trial court denied the motions.[2] Later, the court granted the State's motion to dismiss count 29 charging first degree theft.

The jury found Reeder guilty of 14 counts of securities fraud and 14 counts of first degree theft and returned special verdicts finding that each crime was a major economic offense or series of offenses. The court imposed an exceptional sentence above the standard range.

Reeder appeals.

## ANALYSIS

Reeder raises four issues. First, he claims that his trial attorney had a conflict of interest that deprived Reeder of effective assistance of counsel. Second, he challenges the trial court's denial of his motion to suppress evidence obtained with a special inquiry judge subpoena. Third, he asserts that the statute of limitations barred some or all of the charges against him. Finally, he argues that his sentence violated the prohibition against double jeopardy. We reject Reeder's contentions and affirm.

Motion To Appoint New Counsel

Reeder claims that his trial counsel had a conflict of interest that prejudiced him throughout the proceedings. We review for abuse of discretion a

_____

[2] The court granted the State's motion to admit summaries of Reeder's bank records.

-4-

trial court's decision to deny a motion to substitute counsel.[3] "Whether the circumstances demonstrate a conflict under ethical rules is a question of law, which is reviewed de novo."[4] A defendant "'must show good cause'" before the trial court will allow substitution of counsel, "'such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant.'"[5]

The Sixth Amendment right to counsel includes the right to conflict-free counsel.[6] Reeder invokes several Rules of Professional Conduct to support his claim. RPC 1.7(a) prohibits a lawyer from representing a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if "the representation of one client will be directly adverse to another client" or if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."[7]

---

[3] State v. Stenson, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997).

[4] State v. Regan, 143 Wn. App. 419, 428, 177 P.3d 783 (2008) (citing State v. Vicuna, 119 Wn. App. 26, 30-31, 79 P.3d 1 (2003); State v. Ramos, 83 Wn. App. 622, 629, 922 P.2d 193 (1996)).

[5] State v. Varga, 151 Wn.2d 179, 200, 86 P.3d 139 (2004) (quoting Stenson, 132 Wn.2d at 734).

[6] State v. Davis, 141 Wn.2d 798, 860, 10 P.3d 977 (2000) (citing Wood v. Georgia, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981)).

[7] RPC 1.7(a).

RPC 1.10 prohibits lawyers associated in a firm from knowingly representing a client "when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9."[8]

To establish that an actual conflict of interest deprived him of effective assistance of counsel, Reeder must show both that his attorney had a conflict of interest and that the conflict adversely affected counsel's performance.[9] We presume prejudice if Reeder satisfies this two-part inquiry.[10] Demonstrating a mere possibility of a conflict of interest does not entitle him to relief.[11] "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."[12]

Reeder claims that his attorney, Matthew Pang, had a conflict of interest because another attorney at Pang's law firm, David Roberson, previously gave legal advice to Reeder's sister, Billy Jo Cuzak. Cuzak was neither a witness nor a party in this case. Here, the trial court allowed both parties, as well as

---

[8] RPC 1.10(a).

[9] Mickens v. Taylor, 535 U.S. 162, 174-75, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002); State v. White, 80 Wn. App. 406, 411, 907 P.2d 310 (1995).

[10] Strickland v. Washington, 466 U.S. 668, 692, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Cuyler v. Sullivan, 446 U.S. 335, 349-50, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); In re Pers. Restraint of Richardson, 100 Wn.2d 669, 679, 675 P.2d 209 (1983).

[11] State v. Dhaliwal, 150 Wn.2d 559, 573, 79 P.3d 432 (2003).

[12] Sullivan, 446 U.S. at 350.

Roberson, to address Reeder's motion to substitute counsel based upon this alleged conflict of interest.

Roberson told the court that before the State filed criminal charges against Reeder in this case and while Roberson was working at a different law firm, Cuzak called Roberson for legal advice "regarding a civil matter where I think the subject matter was either the same or very similar." Roberson told the court that he created no file. He also notified his supervisor at his current firm and the attorney originally assigned to Reeder's case about these events; his supervisor decided that no conflict existed.

The trial court denied Reeder's motion to substitute counsel. In its oral ruling, the court reasoned,

> I just don't see a conflict of interest here. Even if there is one, the Court will deem it resolvable by a Chinese wall, and Mr. Roberson is now ordered not to discuss this with anyone at all. Mr. Pang is ordered not to discuss with Roberson, Mr. Pang is ordered to advise all—any investigators that they are not to discuss it with Mr. Roberson. There's no file to warn off so that doesn't make any difference.

"The existence of an attorney/client relationship is a question of fact, the essence of which may be inferred from the parties' conduct or based upon the

client's reasonable subjective belief that such a relationship exists."[13] Even a short consultation may create an attorney-client relationship.[14]

Reeder argues that the conflict of interest "was real and legally cognizable" and that "the trial court's retreat behind a 'Chinese Wall' was ineffectual in resolving the conflict." Reeder claims that this conflict prejudiced him because "defense counsel failed to understand the nature of the case, the relevant evidentiary standards and ultimately presented no defense."

Reeder presents no facts or citations to the record to support his contentions.[15] Although he claims that "Mr. Roberson continues to owe a duty of loyalty to Ms. Cuzak," Reeder cites insufficient facts to establish that Cuzak ever reasonably believed an attorney-client relationship existed. He fails to identify any interest Cuzak had that was adverse to his own or any responsibility owed to

---

[13] Teja v. Saran, 68 Wn. App. 793, 795, 846 P.2d 1375 (1993) (citing Bohn v. Cody, 119 Wn.2d 357, 363, 832 P.2d 71 (1992)).
[14] Teja, 68 Wn. App. at 795-96.
[15] Reeder offers a number of arguments without citing to the record for support. We do not address these arguments. RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (noting that an appellate court does not consider argument unsupported by citation to the record or authority). First, Reeder asserts, "The prosecution has alleged she is a witness, perhaps even an accomplice." The State disputes this claim and nothing in the record supports it. Second, although Reeder states that "the parties returned to court in June, at which time Mr. Reeder expressed his continuing concerns regarding his representation," the record contains no transcript from the cited date. Third, Reeder states that he "renewed his request" to substitute counsel on July 2, 2012, but that "the trial court again denied his prayer for relief." The trial transcript from July 2 contains no indication that Reeder requested substitute counsel on that date.

Cuzak that materially limited his attorney's representation. Reeder identifies no facts showing that the attorneys did not impose a proper Chinese wall or that this Chinese wall did not resolve any alleged conflict of interest.[16] Reeder fails to show a conflict of interest or prejudice. Because he must demonstrate both, the trial court did not abuse its discretion in denying his request to substitute counsel.

Suppression of Evidence Obtained through the Special Inquiry Judge

Reeder challenges the trial court's denial of his motion to suppress his bank and credit card records on three grounds. First, he claims, "[O]btaining these private records without a valid search warrant, or the functional equivalent, violated the Fourth Amendment, Article 1, section 7 of the Washington Constitution, and State v. Miles."[17] Second, he alleges that the procedure used to issue the subpoenas did not meet the requirements of chapter 10.27 RCW. Finally, he claims, "The procedures of the special inquiry judge violate the constitutional guarantee of open administration of justice."

Preliminarily, we note that Reeder failed to present some of these arguments to the trial court. Generally, a failure to present an issue in the trial

---

[16] See State v. Stenger, 111 Wn.2d 516, 522-23, 760 P.2d 357 (1988) ("[W]here a deputy prosecuting attorney is for any reason disqualified from a case, and is thereafter effectively screened and separated from any participation or discussion of matters concerning which the deputy prosecuting attorney is disqualified, then the disqualification of the entire prosecuting attorney's office is neither necessary nor wise.").

[17] 160 Wn.2d 236, 156 P.3d 864 (2007).

court waives the right to raise the issue on appeal.[18] RAP 2.5(a)(3) allows a party to raise for the first time on appeal a "manifest error affecting a constitutional right." Thus, a court previews the merits of the constitutional argument first raised on appeal to determine if it is likely to succeed.[19]

When presented with arguments under both the state and federal constitutions, Washington courts start with the state constitution.[20] Article I, section 7 of the Washington Constitution states, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." This provision prohibits the State from unreasonably intruding upon a person's private affairs[21] and places a greater emphasis on the right to privacy than the Fourth Amendment to the United States Constitution does.[22] It provides a broad privacy right and requires legal authorization to disturb it.[23] Although article I, section 7 is not grounded in notions of reasonableness, reasonableness, along with history, precedent, and common sense, plays a role in deciding the scope of intrusion

---

[18] RAP 2.5(a).

[19] State v. Walsh, 143 Wn.2d 1, 8, 17 P.3d 591 (2001) (citing State v. WWJ Corp., 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)).

[20] State v. Athan, 160 Wn.2d 354, 365, 158 P.3d 27 (2007) (citing State v. Carter, 151 Wn.2d 118, 125, 85 P.3d 887 (2004)).

[21] State v. White, 141 Wn. App. 128, 135, 168 P.3d 459 (2007) (citing State v. Jones, 146 Wn.2d 328, 332, 45 P.3d 1062 (2002)).

[22] State v. Young, 123 Wn.2d 173, 179, 867 P.2d 593 (1994) (citing State v. Stroud, 106 Wn.2d 144, 148, 720 P.2d 436 (1986); State v. Simpson, 95 Wn.2d 170, 178, 622 P.2d 1199 (1980)).

[23] State v. Chacon Arreola, 176 Wn.2d 284, 291, 290 P.3d 983 (2012).

that may be authorized by law.[24] A statute can authorize state intrusion into this broad privacy right but only to the extent "reasonably necessary to further substantial governmental interests that justify the intrusion."[25]

A comparison of a bank customer's privacy rights in bank records under the federal and state constitutions illustrates the greater protection provided by the Washington Constitution. The Fourth Amendment does not provide a bank customer with any constitutionally protected privacy interest in bank records.[26] In contrast, article I, section 7 protects bank records as part of an individual's private affairs.[27] Because the challenged subpoena disturbs Reeder's valid privacy interest in his bank records, we must determine if "'authority of law'" justifies this intrusion.[28]

The legislature created the special inquiry judge proceeding in the Criminal Investigatory Act of 1971, chapter 10.27 RCW,[29] "enacted on behalf of the people of the state of Washington to serve law enforcement in combating

---

[24] Chacon Arreola, 176 Wn.2d at 291.

[25] Chacon Arreola, 176 Wn.2d at 292.

[26] United States v. Miller, 425 U.S. 435, 444, 96 S. Ct. 1619, 48 L. Ed. 2d 71 (1976).

[27] Miles, 160 Wn.2d at 244.

[28] Miles, 160 Wn.2d at 244.

[29] LAWS OF 1971, 1st Ex. Sess., ch. 67.

crime and corruption."[30] The statute appears to have resulted from a study of the

Washington State Judicial Council.[31] The Judicial Council Report states,

> This added law enforcement aid is patterned after the one man grand jury law of Michigan. . . . Special inquiry judge proceedings are viewed by the Judicial Council as supplementary to a regular grand jury which has the power to actively investigate evidence of crime and corruption, a power not granted to the special inquiry judge. The special inquiry judge does not have the power to issue indictments as does the grand jury, but can turn over any evidence produced at the proceedings before him to any subsequent grand juries called pursuant to the statute. Thus, although not actively participating in an investigative role himself, the special inquiry judge provides the prosecutor an added investigatory tool. . . . This will aid the prosecutor in his fight against crime by providing him information not generally otherwise available.[32]

A special inquiry judge is "a superior court judge designated by a majority

of the superior court judges of a county to hear and receive evidence of crime

and corruption."[33] RCW 10.27.170 states,

> When any public attorney, corporation counsel or city attorney has reason to suspect crime or corruption, within the jurisdiction of such attorney, and there is reason to believe that there are persons who may be able to give material testimony or provide material evidence concerning such suspected crime or corruption, such attorney may petition the judge designated as a special inquiry judge pursuant to RCW 10.27.050 for an order directed to such persons commanding them to appear at a designated time and place in said county and to then and there answer such questions concerning the suspected crime or corruption as the special inquiry judge may approve, or provide evidence as directed by the special inquiry judge.

---

[30] RCW 10.27.010.
[31] State v. Manning, 86 Wn.2d 272, 273, 543 P.2d 632 (1975).
[32] JUDICIAL COUNCIL OF STATE OF WASH., THE TWENTY-SECOND BIENNIAL REPORT 17-18 (Jan. 1, 1971).
[33] RCW 10.27.020(7), .050.

Although a special inquiry judge functions and has some powers similar to a grand jury, a special inquiry judge cannot initiate a special inquiry, actively investigate criminal activity, or make a decision to prosecute.[34]

Special inquiry proceedings are secret.[35] RCW 10.27.090(4) grants the public attorney access to all special inquiry judge evidence and permits the public attorney to "introduce such evidence before any other grand jury or any trial in which the same may be relevant." RCW 10.27.090(5)(a) permits the court to, "upon proper application and upon a showing of good cause, make available to a defendant in a subsequent criminal proceeding other testimony or evidence . . . [w]hen given or presented before a special inquiry judge, if doing so is in the furtherance of justice."

RCW 10.27.170 authorizes a special inquiry judge to issue a subpoena when the petitioner "<u>has reason to suspect</u> crime or corruption . . . , and there is <u>reason to believe</u> that there are persons who may be able to give material testimony or provide material evidence concerning such suspected crime or corruption."[36] Thus, the authorizing statute does not require that a petitioner establish probable cause to obtain a subpoena from a special inquiry judge.

---

[34] <u>State v. Neslund</u>, 103 Wn.2d 79, 87-88, 690 P.2d 1153 (1984); <u>Manning</u>, 86 Wn.2d at 274 (citing former RCW 10.27.150 (1971) (the only difference between the current and former version of this section is the substitution of gender neutral language)).
[35] RCW 10.27.090(3).
[36] RCW 10.27.170 (emphasis added.)

Reeder contends RCW 10.27.170 can satisfy the "authority of law" requirement of article I, section 7 of the Washington State Constitution only if it requires that probable cause support a special inquiry judge's decision to issue a subpoena. We must decide the appropriate level of justification required for this state intrusion under article I, section 7—is it probable cause or something less?

Washington cases recognize the general principle that a subpoena must be issued by a neutral magistrate to satisfy article I, section 7's authority of law requirement.[37] This neutral magistrate requirement limits government invasion into private affairs by ensuring "that some determination has been made which supports the scope of the invasion."[38] A special inquiry judge qualifies as a neutral magistrate, even for those cases before the judge on special inquiry.[39]

In State v. Miles, our Supreme Court considered a claim that the issuance of an administrative subpoena for a defendant's bank records without prior judicial review violated the defendant's privacy rights.[40] The court held, "A search of personal banking records without a judicially issued warrant or subpoena to the subject party violates article I, section 7."[41] The court voided the subpoena because no judge determined if the State had satisfied any particular

---

[37] Miles, 160 Wn.2d at 247.
[38] Miles, 160 Wn.2d at 247.
[39] Neslund, 103 Wn.2d at 88.
[40] Miles, 160 Wn.2d at 252.
[41] Miles, 160 Wn.2d at 252 (emphasis added).

level of justification before the subpoena issued. Indeed, the statutory process under review allowed "the state to intrude into private affairs for little or no reason."[42]

The court noted specifically that both the warrant process and "the opportunity to subject a subpoena to judicial review" ensure a determination supporting the scope of an intrusion and reduce mistaken state intrusions.[43] The court's opinion makes clear that its identification of two separate procedures, the warrant process and a judicially reviewed subpoena, was deliberate because the court names both procedures together in at least four separate sentences. Therefore, a subpoena subjected to judicial review can satisfy article I, section 7's authority of law requirement.

Because no Washington case directly addresses the level of justification required before a special inquiry judge can issue a subpoena, we look to grand jury jurisprudence for guidance. In United States v. R. Enterprises, Inc.,[44] the United States Supreme Court concluded, "[T]he Government cannot be required to justify the issuance of a grand jury subpoena by presenting evidence sufficient

---

[42] Miles, 160 Wn.2d at 248.
[43] Miles, 160 Wn.2d at 247.
[44] 498 U.S. 292, 297, 111 S. Ct. 722, 112 L. Ed. 2d 795 (1991); see also In re M.H., 648 F.3d 1067, 1071 (9th Cir. 2011) ("The Government is not required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of its inquiry is to establish whether probable cause exists to accuse the taxpayer of violating our tax laws.").

to establish probable cause because the very purpose of requesting the information is to ascertain whether probable cause exists."

Similar to a federal grand jury, a purpose of a special inquiry proceeding is to obtain evidence about suspected crimes for determining probable cause that a crime has been committed.[45] The general public has a substantial interest in the effective enforcement of criminal statutes. Also, a special inquiry proceeding cannot be used to gather evidence against a charged defendant.[46] Therefore, the appropriate level of justification for state intrusion must be something less than probable cause.

RCW 10.27.170 requires showing a reasonable suspicion, a showing at least as great as that required to satisfy the requirements for a grand jury subpoena under the Fourth Amendment.[47] Here, a neutral magistrate determined that evidence presented by the petitioner established a reasonable suspicion that Reeder had committed a crime and reason to believe the records described in the subpoena would provide material evidence of that crime. Because reasonableness, along with history, precedent, and common sense, plays a role in deciding the scope of intrusion that may be authorized by law, we conclude that the process used to obtain Reeder's bank and credit card records

---

[45] Manning, 86 Wn.2d at 275.
[46] Manning, 86 Wn.2d at 275.
[47] See Okla. Press Publ'g Co. v. Walling, 327 U.S. 186, 208-09, 66 S. Ct. 494, 90 L. Ed. 614 (1946).

did not violate his constitutional privacy right.[48] The process provided judicial oversight over the decision to intrude and the scope of the intrusion.

To support his argument that article I, section 7 requires probable cause, Reeder relies upon State v. Garcia-Salgado.[49] There, the defendant challenged a trial court order, entered after the defendant was charged, requiring him to submit to a DNA (deoxyribonucleic acid) swab.[50] The court concluded that the court's order could function as a warrant if it met the constitutional requirements of a search warrant but found the challenged order deficient because the record did not establish what evidence the State presented to the trial court before the judge issued the order.[51] Therefore, the record could not support the trial court's determination of probable cause.[52] Garcia-Salgado provides no guidance for the level of justification required to obtain a special inquiry judge subpoena.

Next, Reeder claims that the special inquiry judge did not issue the subpoenas for Reeder's bank and credit card records in accordance with the

---

[48] Reeder also alleges that the prosecutor "does not assert, even second hand, that the information provided to the magistrate was given under oath." But the cited document is the prosecutor's signed and sworn declaration. The portion of this document that Reeder cites contains the trial court's findings in McAllister v. Reeder, No. 08-2-00063-2 (Skagit County Super. Ct., Wash. May 12, 2009). Thus, Reeder's argument is baseless. Nothing in the statute specifies a particular form that a petition must take.

[49] 170 Wn.2d 176, 240 P.3d 153 (2010).

[50] Garcia-Salgado, 170 Wn.2d at 183.

[51] Garcia-Salgado, 170 Wn.2d at 187.

[52] Garcia-Salgado, 170 Wn.2d at 187-88.

requirements of chapter 10.27 RCW. Specifically, he alleges, "The county prosecutor only serves as a 'public attorney' under the statute where a grand jury is impaneled." Reeder cites RCW 10.27.020(2), which defines a "public attorney" as "the prosecuting attorney of the county in which a grand jury or special grand jury is impaneled." Because Reeder did not raise this issue in the trial court and makes no claim that it involves manifest error, we do not consider it.

Reeder also argues, "The record fails to establish the subpoena was issued by a neutral magistrate selected in accordance with RCW 10.27.020(7)." He claims, "No subpoena has been produced . . . , nor has a neutral magistrate been identified, either by name, number or any other designation." As discussed above, our Supreme Court has held that a special inquiry judge can act as a neutral and detached magistrate.[53] At trial, the parties discussed with the court Reeder's access to the subpoenas:

> THE COURT: Did I hear you say, Mr. Peterson, that when you are asked, you do provide copies of the inquiry judge's subpoena?
>
> MR. PETERSON: Yes.

---

[53] Neslund, 103 Wn.2d at 88. Reeder presents no facts showing that the special inquiry judge did not manifest the neutrality and detachment required of a judicial officer. Cf. Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 326-28, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979) (judge who accompanied police on a raid of a pornographic bookstore, where he reviewed material for obscenity and added it to a previously signed search warrant, did not manifest the neutrality and detachment required of a judicial officer).

THE COURT: So, that's been asked for.

MR. PETERSON: Actually, we photocopied several of them. . . .

MR. PANG: That's what I requested because that was part of what I requested when I was able to go through some of the records.

THE COURT: So, you do have that?

MR. PANG: I don't know which ones I have because I was only able to go through two. . . .

So, for example, the two boxes that I have gone through, I haven't read everything. . . .

THE COURT: Fair enough. I am going to take Mr. Peterson's representation at this time that those will be made available to you.

Although Reeder's trial counsel appears to have received copies of at least some of the challenged subpoenas, Reeder identifies nothing in the record supporting his arguments on this claim. Therefore, we reject it.

Finally, Reeder alleges that the secrecy of the special inquiry proceedings is "inconsistent with the constitutional dictate of open courts." He cites article I, section 10 of the Washington State Constitution, which states, "Justice in all cases shall be administered openly, and without unnecessary delay."

No Washington case has addressed the public's right to attend special inquiry proceedings. Washington has adopted the two-part experience and logic test to determine if a public trial right attaches to a particular proceeding.[54] The

---

[54] State v. Sublett, 176 Wn.2d 58, 72-73, 292 P.3d 715 (2012).

experience prong asks if the place and process have historically been open to the press and general public.[55] The logic prong asks if public access plays a significant positive role in the functioning of the challenged process.[56] Applying this test, we conclude that denying public access to special inquiry proceedings does not violate article I, section 10 of the Washington State Constitution.

For purposes of our analysis of this issue, we consider special inquiry proceedings to be analogous to grand jury proceedings. We first address the experience prong. Grand jury proceedings in Washington have been closed to the public continuously since territorial days.[57] The federal courts have "a long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts."[58]

We next address the logic prong. The Washington Supreme Court has agreed with the United States Supreme Court's description of a grand jury proceeding as the classic example of a government operation whose proper

---

[55] Sublett, 176 Wn.2d at 73.
[56] Sublett, 176 Wn.2d at 73.
[57] See LAWS OF 1854, § 57, at 111; LAWS OF 1873, § 176, at 222; CODE OF 1881, ch. LXXX, § 992; REM. REV. STAT. § 2040 (Supp. 1932); former RCW 10.28.100 (LAWS OF 1854, § 57, at 111), repealed by LAWS OF 1971, 1st Ex. Sess., ch. 67, § 20; RCW 10.27.100.
[58] United States v. Procter & Gamble Co., 356 U.S. 677, 681, 78 S.Ct. 983, 2 L. Ed. 2d 1077 (1958).

-20-

functioning depends upon secrecy and "'would be totally frustrated if conducted openly.'"[59] Thus, Reeder has failed to establish a violation of article I, section 10.

Statute of Limitations

Reeder also claims that the statute of limitations expired before the State filed the information.[60] "If the to-convict instruction permits the jury to convict the defendant based solely on acts committed beyond the statutory limitation period, reversal is required."[61] The State bears the burden of establishing that it charged Reeder within the applicable limitations period.[62]

On April 8, 2011, the State charged Reeder with 14 counts of securities fraud and 14 counts of first degree theft by deception based upon 14 separate investment transactions between McAllister and Reeder.[63] On June 15, 2012, the State filed an amended information, which added no new counts.[64] Counts 1

---

[59] Tacoma News, Inc. v. Cayce, 172 Wn.2d 58, 76, 256 P.3d 1179 (2011) (quoting Press-Enter. Co. v. Superior Court, 478 U.S. 1, 9, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)).

[60] Although he moved to dismiss only the securities fraud counts at trial based upon the expiration of the statute of limitations, Reeder may also challenge the first degree theft counts on appeal because the criminal statute of limitations creates an absolute bar to prosecution. State v. Mehrabian, 175 Wn. App. 678, 696, 308 P.3d 660 (2013) (quoting State v. Dash, 163 Wn. App. 63, 67, 259 P.3d 319 (2011)), review denied, No. 89103-6 (Wash. Nov. 6, 2013).

[61] Mehrabian, 175 Wn. App. at 696 (citing Dash, 163 Wn. App. at 65).

[62] State v. Walker, 153 Wn. App. 701, 707, 224 P.3d 814 (2009).

[63] We do not include count 29, which the court ultimately dismissed.

[64] Cf. State v. Eilts, 23 Wn. App. 39, 42, 596 P.2d 1050 (1979) (statute of limitations barred counts added by amended information after period of limitations had run).

-21-

and 3 of the information charged Reeder with securities fraud during a period of time intervening between March 7, 2006, and June 20, 2007, and March 9, 2006, and June 20, 2007. The State based these counts upon checks that McAllister wrote to Reeder on March 7 and March 9, respectively. The remaining counts of securities fraud arose from 12 different investment transactions based upon checks that McAllister wrote to Reeder from May 4, 2006, until June 20, 2007.

The State also charged Reeder with 14 counts of first degree theft by deception. In the amended information, the State charged counts 2, 4, 6, 8, 10, 12, and 14 as a continuing course of conduct beginning on various dates from March 7, 2006, to July 5, 2006, and ending on June 20, 2007. In the remaining counts, the State charged Reeder based upon seven separate transactions occurring from August 2, 2006, until June 20, 2007.

The statute of limitations for securities fraud under The Securities Act of Washington, chapter 21.20 RCW, is five years after the violation or three years after the actual discovery of the violation, whichever date is later.[65] Reeder argues that the applicable statute of limitations is three years under the Washington Criminal Code, chapter 9A.04 RCW, which states, "No other felony may be prosecuted more than three years after its commission."[66]

---

[65] RCW 21.20.400(3).
[66] RCW 9A.04.080(1)(h).

-22-

Reeder claims that the rule of lenity requires the court to apply the shorter limitation period. He argues, "[T]wo separate statutes appear to set the limits for prosecuting securities fraud. . . . Because they set very different periods of limitation, they cannot be reconciled and the shorter period should be applied and the charges dismissed."

We apply the rule of lenity to construe an ambiguous statute; we must apply the interpretation most favorable to the defendant.[67] "The rule of lenity operates in the absence of clear evidence of legislative intent. It applies only if the statute is ambiguous."[68]

"'It is a fundamental rule that where the general statute, if standing alone, would include the same matter as the special act and thus conflict with it, the special act will be considered as an exception to, or qualification of, the general statute.'"[69] Here, both statutes provide a limitations period. Because these statutes are not ambiguous and they include the same matter and thus conflict, The Securities Act provision applies to the securities fraud counts as an exception to, or qualification of, the general provision.

---

[67] State v. Datin, 45 Wn. App. 844, 845, 729 P.2d 61 (1986) (citing State v. Welty, 44 Wn. App. 281, 283, 726 P.2d 472 (1986)).

[68] Datin, 45 Wn. App. at 845 (citing State v. Pentland, 43 Wn. App. 808, 811, 719 P.2d 605 (1986)).

[69] Residents Opposed to Kittitas Turbines v. State Energy Facility Site Evaluation Council, 165 Wn.2d 275, 309, 197 P.3d 1153 (2008) (quoting Wark v. Wash. Nat'l Guard, 87 Wn.2d 864, 867, 557 P.2d 844 (1976)).

The statute of limitations for first degree theft by deception was three years until 2009, when the legislature extended the limitations period to six years.[70] "'When the Legislature extends a criminal statute of limitation, the new period of limitation applies to offenses not already time barred when the new enactment was adopted and became effective.'"[71] Because none of the theft counts were time barred when the legislature extended the statute of limitation, the six-year limitation period applies to the theft counts.

Reeder further alleges that insufficient evidence supported the jury's finding that he engaged in a "continuing criminal impulse." He asserts, "[T]he conduct of Mr. Reeder and the related criminal intent were each complete at the point he received the money from McAllister and converted it to other uses." We review a challenge to the sufficiency of the evidence for substantial evidence,[72] viewing all evidence and reasonable inferences in the light most favorable to the State.[73] Substantial evidence is evidence sufficient to persuade a fair-minded,

---

[70] See former RCW 9A.04.080(h) (2009); RCW 9A.04.080(1)(d)(iv).

[71] State v. Sutherland, 104 Wn. App. 122, 134, 15 P.3d 1051 (2001) (quoting State v. Hodgson, 108 Wn.2d 662, 666-67, 740 P.2d 848 (1987)).

[72] State v. Stevenson, 128 Wn. App. 179, 193, 114 P.3d 699 (2005).

[73] State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004) (citing State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

rational person that a finding is true.[74] We defer to the trier of fact on issues of conflicting testimony, witness credibility, and overall weight of the evidence.[75]

When successive takings are the result of a single and continuing criminal impulse and the defendant commits the takings as part of a single criminal plan, the takings may constitute a single theft.[76] In such a case, the defendant does not complete the crime until the criminal impulse terminates.[77] "When a continuing criminal impulse exists, the statute of limitations does not begin to run until the crime is completed."[78] The jury determines as a question of fact if a criminal impulse continues into the statute of limitations period.[79]

The jury instructions for all counts of securities fraud required the jury to find that the State proved beyond a reasonable doubt that Reeder's acts charged as securities fraud "were part of a continuing course of conduct and were

---

[74] In re Estate of Palmer, 145 Wn. App. 249, 265-66, 187 P.3d 758 (2008) (citing Rogers Potato Serv., LLC v. Countrywide Potato, LLC, 152 Wn.2d 387, 391, 97 P.3d 745 (2004)).

[75] Thomas, 150 Wn.2d at 874-75 (quoting State v. Cord, 103 Wn.2d 361, 367, 693 P.2d 81 (1985)).

[76] Mehrabian, 175 Wn. App. at 697 (citing Dash, 163 Wn. App. at 68; State v. Reid, 74 Wn. App. 281, 290, 872 P.2d 1135 (1994); State v. Carrier, 36 Wn. App. 755, 757, 677 P.2d 768 (1984); State v. Vining, 2 Wn. App. 802, 808-09, 472 P.2d 564 (1970)).

[77] Mehrabian, 175 Wn. App. at 697 (citing Dash, 163 Wn. App. at 68; Reid, 74 Wn. App. at 290).

[78] Mehrabian, 175 Wn. App. at 697 (citing Dash, 163 Wn. App. at 68; Reid, 74 Wn. App. at 290-91).

[79] Mehrabian, 175 Wn. App. at 697 (quoting State v. Mermis, 105 Wn. App. 738, 746, 20 P.3d 1044 (2001)).

committed under a continuing criminal impulse that did not terminate until after April 7, 2006." The court instructed the jury that to convict Reeder of first degree theft, it had to find the State proved beyond a reasonable doubt "[t]hat the acts were part of a continuing course of conduct." To find that Reeder's acts constituted a "continuing course of conduct," the jury had to find that the acts "were part of an ongoing criminal enterprise with a single objective." To find a "continuing criminal impulse," the jury had to find that Reeder's "criminal impulse or intent continued unabated throughout the acts."

Here, Reeder continuously misrepresented to McAllister that he intended to use McAllister's funds to acquire and develop land. Instead, Reeder used the money at casinos and for personal expenses. Throughout the charging period, Reeder continued to solicit investments from McAllister while maintaining no intent to acquire the properties. Thus, each time that McAllister gave money to Reeder as part of this fraudulent scheme, Reeder committed another act of securities fraud and theft and restarted the limitations period. Because the State charged Reeder within five years of his last act in 2007, we conclude that the statute of limitations does not bar the securities fraud or the theft counts.

Double Jeopardy

Finally, Reeder claims that his sentence violated the prohibition against double jeopardy because the trial court imposed multiple punishments for the

same offense. A double jeopardy claim presents a question of law that we review de novo.[80] The guaranty against double jeopardy in the United States and Washington State Constitutions protects against multiple punishments for the same offense.[81] A defendant may raise a double jeopardy challenge for the first time on appeal.[82]

When the State charges a person with violating the same statutory provision numerous times, multiple convictions survive a double jeopardy challenge only if each is a separate "unit of prosecution."[83] To analyze a double jeopardy claim, we must determine what "unit of prosecution" the legislature intends as a punishable act under the statute.[84] To make this determination, we apply the rules of statutory construction to the statute at issue.[85] We construe any ambiguities in favor of lenity.[86]

We begin by examining the statute in question. RCW 21.20.010 defines securities fraud as follows:

> It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

---

[80] State v. Frodert, 84 Wn. App. 20, 25, 924 P.2d 933 (1996).

[81] State v. Calle, 125 Wn.2d 769, 776, 888 P.2d 155 (1995).

[82] State v. Adel, 136 Wn.2d 629, 631-32, 965 P.2d 1072 (1998).

[83] State v. Turner, 102 Wn. App. 202, 206, 6 P.3d 1226 (2000) (citing Adel, 136 Wn.2d at 633-34).

[84] Turner, 102 Wn. App. at 206 (citing Adel, 136 Wn.2d at 634; State v. Bobic, 140 Wn.2d 250, 261, 996 P.2d 610 (2000)).

[85] Turner, 102 Wn. App. at 206-07 (citing Adel, 136 Wn.2d at 634).

[86] Turner, 102 Wn. App. at 207 (quoting Adel, 136 Wn.2d at 634-35).

(1) To employ any device, scheme, or artifice to defraud;

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

"'Sale' or 'sell' includes every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value."[87]

The legislature's choice to prohibit false or misleading acts in connection with the sale of "any" security, as well as its choice to define "sale" to include "every" sale, indicates its intent for each separate sale of a security or interest in a security to constitute a separate crime. Thus, the statute's plain language indicates that each transaction between McAllister and Reeder constituted a separate crime.

Reeder claims that the unit of prosecution for securities fraud is "the scheme itself and is represented by Count 1 which alleges these practices stretched across the charging period as part of a singular criminal impulse. . . . The remaining counts must be vacated and dismissed." He cites State v. Mahmood[88] to support his argument, but that case addressed only whether the State could charge the separate alternatives listed in RCW 21.20.010(2) as separate crimes:

---

[87] RCW 21.20.005(14).
[88] 45 Wn. App. 200, 206, 724 P.2d 1021 (1986).

> [F]or the purposes of RCW 21.20.010, making an untrue statement and omitting to make a material statement are not separate offenses: They are connected by the object of deceiving; they may inhere in the same transaction and they are consistent and not repugnant to each other. Such an analysis is consistent with the rule of lenity described above. RCW 21.20.010 is very similar to the public assistance frauds statute, RCW 74.08.331, which . . . defines a single crime that can be committed in several different ways.

Here, in contrast, the State based each count upon a separate transaction; the charged acts did not "inhere in the same transaction." Therefore, Mahmood does not support Reeder's claim that the legislature intended each scheme to constitute a single unit of prosecution regardless of the number of securities sold as part of the scheme. The time periods alleged here reflect the time periods for which Reeder's criminal impulse continued for those counts.

Reeder also asserts that the jury instructions "never advised the jury that it was required to find 'separate and distinct acts' for each count of securities fraud." Citing State v. Borsheim,[89] Reeder argues, "[T]he court did not inform the jury that they must unanimously agree about the act alleged, nor that they cannot rely on the conduct to support conviction on different counts." The court instructed the jury: "A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count."

---

[89] 140 Wn. App. 357, 367-68, 165 P.3d 417 (2007).

In <u>Borsheim</u>, the State alleged that the defendant committed four counts of rape within the same charging period.[90] We held that the trial court's single "to convict" instruction for all four counts failed to properly inform the jury that it needed to find a separate act of rape for each count.[91] Here, in contrast, the court gave separate "to convict" instructions for each count. Each instruction included a distinct date and evidence of a separate transaction supporting the individual count. Further, the prosecutor explained during the State's closing argument that each check McAllister wrote to Reeder constituted a separate count of securities fraud and theft:

> Each transaction, every check between Mr. Reeder and Mr. McAllister is two crimes. One is Securities Fraud and the other one is Theft by Deception in the First Degree.
>
> You see in Count I and Count II, for example, have the same date because it's the same check, the same transaction, same as III and IV. All the odd numbers counts are Securities Fraud, and all even counts are Theft by Deception.

The jury instructions, evidence of the transactions at issue, and the State's closing argument properly informed the jury that the State did not seek multiple convictions for the same transaction.

Reeder cites <u>State v. Turner</u>[92] in challenging his conviction of 14 counts of first degree theft. He asserts, "Washington's first degree theft statute does not

---

[90] <u>Borsheim</u>, 140 Wn. App. at 363, 367.
[91] <u>Borsheim</u>, 140 Wn. App. at 367-68.
[92] 102 Wn. App. 202, 209, 6 P.3d 1226 (2000).

expressly define the unit of prosecution, but is ambiguous as to whether multiple theft schemes or plans over the same period of time and against the same victim may be punished separately." He argues that the court should construe this ambiguity in his favor.

RCW 9A.56.020(1)(b) defines "theft" as "[b]y color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services." A party "'wrongfully obtains'" or "'exerts unauthorized control'" over another's property when he or she, having that property in their possession, custody, or control as an agent, "secrete[s], withhold[s], or appropriate[s] the same to his or her own use or to the use of any person other than the true owner or person entitled thereto."[93] Former RCW 9A.56.030(1) states, "A person is guilty of theft in the first degree if he or she commits theft of . . . [p]roperty or services which exceed(s) one thousand five hundred dollars in value."[94]

In Turner, Turner embezzled money from his employer in 72 individual acts of theft over a 10-month period.[95] He used four different methods or "schemes," which were concurrent during the 10-month period, to embezzle the money.[96] The State charged Turner initially with one count of theft for all 72

_____

[93] Former RCW 9A.56.010(19)(b) (2006).
[94] Former RCW 9A.56.030(1)(a) (2005).
[95] Turner, 102 Wn. App. at 204.
[96] Turner, 102 Wn. App. at 204.

transactions but later amended the information to charge him with four counts of first degree theft by grouping the acts into the four schemes he used to steal the money.[97] A jury convicted him on three of the four counts.[98]

On appeal, the State argued that "its discretion under former RCW 9A.56.010(17)(c) (1998) to aggregate various third degree thefts to first degree theft demonstrates that the relevant unit of prosecution here is each of the multiple schemes or plans under which Turner stole funds."[99] Engaging in a unit of prosecution analysis, this court disagreed with the State and reversed two of the three convictions, explaining,

> The first degree theft statute makes no mention of schemes or plans in distinguishing the seriousness of the crime from other degrees of theft. And there is no wording in the statute that indicates any other relevant distinction between multiple acts of theft committed against the same person over the same period of time.
>
> We conclude that the lack of clarity creates ambiguity whether multiple schemes or plans constitute separate units of prosecution under the first degree theft statute. Thus, the rule of lenity dictates that we construe this ambiguity in favor of Turner.[100]

This case does not involve multiple schemes as considered in Turner. Further, the court in Turner did not hold that the State is prohibited from charging multiple counts based on separate, unauthorized withdrawals:

---

[97] Turner, 102 Wn. App. at 204.
[98] Turner, 102 Wn. App. at 204.
[99] Turner, 102 Wn. App. at 207 (footnote omitted).
[100] Turner, 102 Wn. App. at 209 (footnote omitted).

We do not address whether the State was free to charge 72 individual counts of theft in this case.

Because of our resolution of the double jeopardy issue, we need not reach the question of whether the court erred by determining that the multiple counts did not constitute the same criminal conduct.[101]

Turner does not change the well-established rule that prosecutors have considerable latitude either to aggregate charges or to bring multiple charges.[102] The unit of prosecution under former RCW 9A.56.030(1)(a) for first degree theft was $1,500 for each fraudulent transaction. Because the State had discretion to charge Reeder with a separate count of securities fraud and theft for each discrete transaction, he was not subject to double jeopardy.

## CONCLUSION

Reeder fails to allege facts showing that his trial attorney had a conflict of interest that deprived him of effective assistance of counsel. The State did not violate his privacy right by obtaining his bank and credit card records through the special inquiry proceedings. The statute of limitations periods did not expire

---

[101] Turner, 102 Wn. App. at 212.

[102] See, e.g., State v. Lewis, 115 Wn.2d 294, 299, 797 P.2d 1141 (1990) (recognizing that prosecutors have wide discretion in determining how and when to file criminal charges); State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984) ("Whether the incidents are to be charged separately or brought as one charge is a decision within prosecutorial discretion."), overruled on other grounds by State v. Kitchen, 110 Wn.2d 403, 756 P.2d 105 (1988); State v. Pettitt, 93 Wn.2d 288, 295, 609 P.2d 1364 (1980) (acknowledging that prosecutorial discretion in charging assumes a prosecutor "will exercise [that discretion] after an analysis of all available relevant information").

before the State charged Reeder. The State acted within its discretion when it charged Reeder with separate counts for each discrete fraudulent transaction. For these reasons, we affirm.

Leach, J.

WE CONCUR: