

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | ) |
| | ) No. 76164-1-I |
| RALPH NILSSEN, | ) |
| | ) (Consolidated with |
| Appellant, | ) No. 77091-8-I) |
| | ) |
| and | ) DIVISION ONE |
| | ) |
| ELISE NILSSEN, | ) UNPUBLISHED OPINION |
| | ) |
| Respondent. | ) |
| | ) FILED: March 5, 2018 |

LEACH, J. — In these consolidated appeals, Ralph Nilssen challenges a dissolution decree, child support order, and parenting plan. He also challenges an order denying his motion to vacate those decisions. Because his briefs repeatedly violate our Rules of Appellate Procedure and settled principles of appellate review and because his claims are not persuasive in any event, we affirm.

## FACTS

Ralph and Elise Nilssen married in August 1997 and separated in June 2015. They have five children. At the time of trial, the children were between 10 and 15 years old.

After a lengthy trial, the court entered a dissolution decree, parenting plan, child support order, and findings of fact and conclusions of law. The court

ordered Ralph to pay $3,500 per month in maintenance. It concluded that Elise had "a need for this support and the petitioner has the ability to pay this support while also meeting his own needs." The court noted that Elise did not work outside the home while she raised the children and needs "education and job skills in order to become self-sufficient."

The child support worksheet listed Ralph's gross monthly income at $10,000.00 and his child support obligation at $1,766.51.[1] The court found that both parties incurred significant attorney fees and that Elise needed, and Ralph had the ability to pay, $30,000.00 for a portion of her attorney fees. The court added that "the sheer volume of declarations, emails and other communications from petitioner related to this litigation has been an abusive use of conflict that has created or exacerbated the danger of serious damage to the children's psychological development."

The court entered extensive findings regarding Ralph's acts of domestic violence. It found in part that

> [c]redible testimony from respondent and her witnesses, and the totality of the evidence in this case makes clear that the outward

---

[1] The court's findings also noted,

> Shortly after trial concluded, attorneys for the parties notified the court that petitioner has been hired to begin work in the next few days. As a result, both parties submitted proposed Washington State Child Support Worksheets to the court listing petitioner's gross income as $10,000. This level of income is consistent with his historic earnings.

image of this family was very different from the reality at home. In reality petitioner was verbally, emotionally and physically abusive to his wife and children, especially Zane. The petitioner pinched, grabbed and shoved the children, especially Zane, in a manner that was physically and emotionally abusive.

. . . .

All five children have been in therapy since October 2013 or before. All have been diagnosed by their therapists with Post Traumatic Stress Disorder due to either witnessing or experiencing domestic violence. The children suffer from anxiety which manifests itself differently with each child.

Significantly, the court found that "[t]he GAL [Guardian ad Litem] and FCS [Family Court Services] social worker reported the father had admitted to certain abusive, controlling, or scary behaviors" but now "asserted that they had misquoted him." The court expressly found Ralph's trial testimony "not credible."

The court ruled that the children would live with Elise and imposed residential restrictions on Ralph under RCW 26.09.191.[2] The restrictions were due to Ralph's "physical and repeated emotional abuse" of the children, "a history of domestic violence . . . or assaults which causes grievous bodily harm or the fear of such harm," and his abusive use of conflict. The court ordered Ralph to make progress in a domestic violence perpetrator treatment program and obtain individualized domestic violence treatment from Katy Stanfill, PhD. Supervised

---

[2] The trial court's decision referred to the "primary residential parent." Ch. 26.09 RCW does not recognize primary residential parents or secondary residential parents. Such shorthand may be convenient but unfortunately and inappropriately implies that one parent is more important than another. The Parenting Act of 1987, chs. 26.09, 26.10 RCW, attempted to defeat such labelling implications by removing the designation of one parent as custodian and the other as visiting.

visitation would commence if he complied with treatment. Visits would become unsupervised once he completed 26 weeks of treatment and attended a Wellspring DV [Domestic Violence] Dad's Class. Overnights would commence once he complied with these requirements for 16 weeks.

Ralph moved for reconsideration, challenging portions of the parenting plan and child support calculations. The court granted the motion in part:

> The petitioner's monthly earnings must be imputed considering the absence of reliable proof of actual earnings. The court finds petitioner's current <u>annual gross earnings should be imputed at $90,000 based upon the minimum earnings amount he is guaranteed for the first year [of] his new employment</u>, the current opportunity for commissions that would increase annual earnings to $120,000 at the new employment, and the petitioner's work experience, skills, and historical earnings over $100,000.
>
> The court finds <u>the appropriate amount of monthly spousal maintenance that respondent needs and petitioner has the ability to pay is $2,850 per month</u> for 48 months. This amount includes consideration of the costs petitioner will necessarily incur to comply with the phased-in visitation schedule set forth in the Parenting Plan. <u>Using these revised earnings and maintenance figures results in a reduction in Child Support transfer payments from $1,767 to $1,011.14 per month for 5 children. This is a reduction in child support of over $750 per month.</u>

(Emphasis added.) The court denied Ralph's request to reduce or eliminate his obligation to pay $40,000 of Elise's attorney's fees ($10,000 awarded pretrial and $30,000 after trial). Ralph filed a timely notice of appeal.

On May 23, 2017, Ralph filed a motion to vacate the court's orders under CR 60(1), (4), and (11). He argued the orders were "contrary to the actual trial evidence/testimony," demonstrated "the court's extreme bias and prejudice

against the father," were "devoid of judicial balance and fairness," and required vacation "as a matter of justice." The court denied the motion to vacate. Ralph filed a second notice of appeal.

On April 14, 2017, Ralph filed an opening brief in his first appeal. The brief addressed only financial issues and sought "immediate emergency relief . . . to survive financially." The brief acknowledged that "these emergency requests do not address the [Parenting Plan] issues . . . , but the Appellant will address these issues in a non-emergency venue through a Motion to Vacate the Parenting Plan."

In June 2017, Ralph moved for permission to file a supplemental brief in his first appeal. He stated he had erroneously believed he could reserve the right to file a second brief on parenting plan issues by indicating his intent to do so in the initial emergency brief. A commissioner of this court denied the motion "at this time." Ralph did not move to modify the commissioner's ruling. Nor did he ever renew his motion to file a supplemental brief in the first appeal.

On June 30, 2017, Ralph filed a brief challenging the parenting plan in his second appeal, the appeal from the denial of his motion to vacate.

In August 2017, this court consolidated Ralph's appeals and offered Elise an opportunity to file a response brief addressing both appeals. Elise did not file a brief.

On December 20, 2017, the court terminated Ralph's maintenance obligation due to Elise's remarriage.

## ANALYSIS

### I.

Ralph's briefs on appeal violate the Rules of Appellate Procedure and settled principles of appellate review.

Despite the requirements of RAP 10.3(a)(6) and longstanding case law, Ralph's briefs, which total 90 pages, contain almost no citations to authority or meaningful legal analysis.[3] They also completely fail to mention, let alone apply, the standards of review applicable to the issues raised.[4] In addition, the "Statement of the Case" in the initial opening brief asserts numerous arguments. This violates RAP 10.3(a)(5) (a "Statement of the Case" is "[a] fair statement of the facts and procedure relevant to the issues presented for review, without argument. Reference to the record must be included for each factual statement.") (Emphasis added.) The opening brief in Ralph's appeal from the denial of his motion to vacate

---

[3] Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989) (appellate court will generally decline to consider issues unsupported by cogent legal argument and citation to relevant authority); State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990) (appellate court will not consider claims that are insufficiently argued).

[4] RAP 10.3(a)(6); Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) ("We will not consider an inadequately briefed argument.") (citing Bohn v. Cody, 119 Wn.2d 357, 368, 832 P.2d 71 (1992)).

lacks citations to the record for numerous assertions. When the brief does provide record citations, they appear as lists of transcript pages that do not always indicate which factual assertion each citation supports. These omissions violate RAP 10.3(a)(5), RAP 10.4(f), and RAP 10.3(a)(6) and hamper review.[5] Taken together, these violations of our rules and principles of review are fatal to the appeal.[6]

## II.

In addition, Ralph's briefs on appeal are substantively deficient. Review of a ruling on a motion to vacate is limited to the ruling itself.[7] In violation of that rule, Ralph's brief in his appeal from the denial of his motion to vacate focuses solely on the underlying parenting plan. It provides no analysis of CR 60 or the motion to vacate. Ralph could have raised parenting plan issues in his initial brief in the appeal from the decree and parenting plan, but he chose to expressly limit that brief to financial issues. Then, when a commissioner tentatively denied his motion to file a supplemental brief challenging the parenting plan in that

_____

[5] RAP 10.3(a)(5) requires references to the record for each factual statement in a party's statement of the case. RAP 10.4(f) requires references to both the page and part of the record cited. RAP 10.3(a)(6) requires arguments "together with citations to legal authority and references to relevant parts of the record."

[6] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 819, 828 P.2d 549 (1992) (refusing to consider claims unsupported by references to the record or citation to authority); accord State v. Reeder, 181 Wn. App. 897, 910 n.15, 330 P.3d 786 (2014), aff'd, 184 Wn.2d 805, 365 P.3d 1243 (2015).

[7] In re Marriage of Persinger, 188 Wn. App. 606, 609, 355 P.3d 291 (2015); Wright v. B&L Props., Inc., 113 Wn. App. 450, 456, 53 P.3d 1041 (2002).

appeal, he did not move to modify the commissioner's ruling or attempt to renew the motion. As a result, Ralph's challenges to the parenting plan are not properly before us.

In any event, virtually all of Ralph's challenges to the parenting plan involve credibility determinations, conflicting testimony, or the weight or persuasiveness of the evidence. These matters are beyond the scope of our review.[8]

Ralph's brief challenging the financial obligations imposed by the court's rulings also falls short of meeting his "heavy burden of showing a manifest abuse of discretion."[9] Primarily, he claims that the court's decisions, including the order on reconsideration, saddled him with financial obligations that exceed his ability to pay. Citing CR 59(a)(1), (5), (7), and (9), he contends the financial obligations are "so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice." This claim fails to meet Ralph's burden for several reasons.

---

[8] In re Dependency of A.V.D., 62 Wn. App. 562, 568, 815 P.2d 277 (1991); In re Welfare of S.J., 162 Wn. App. 873, 881, 256 P.3d 470 (2011); State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990); State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

[9] In re Marriage of Kim, 179 Wn. App. 232, 240, 317 P.3d 555 (2014) ("'The emotional and financial interests affected by [dissolution] decisions are best served by finality. The spouse who challenges such decisions bears the heavy burden of showing a manifest abuse of discretion on the part of the trial court.'" (quoting In re Marriage of Landry, 103 Wn.2d 807, 809, 699 P.2d 214 (1985))). For purposes of our discussion, we consider only the arguments in the "Argument" section of Ralph's brief.

First, the appellant has the burden of providing this court with a sufficient record to review the issues raised on appeal.[10] The court's order on reconsideration states that Ralph's motion "relies in part on evidence that was not introduced at trial, <u>which the Court will not consider</u>." (Emphasis added.) The order does not identify what the court refused to consider, and Ralph evidently did not seek clarification of that portion of the court's ruling below. As a result, the record is insufficient to review Ralph's challenge to the partial denial of his motion to reconsider.

Second, a number of Ralph's financial calculations either differ significantly from those he offered below or appear to be less onerous than he asserts. For example, Ralph estimated below that his travel expenses for visitation would total $1,132.89. On appeal, however, he claims the amount is $3,139.99, nearly three times the amount he claimed below.[11] His court-imposed therapy expenses, while significant, are of limited duration and it is unclear whether the expenses are covered in part by insurance. The reasonableness of other alleged expenses, such as $1,866.00 in monthly rent and $1,057.00 in monthly transportation costs, is also difficult to assess on this record.

Third, the court's imputation of $7,500 in monthly income was a <u>conservative</u> estimate. As previously noted, the court on reconsideration

---

[10] <u>Story v. Shelter Bay Co.</u>, 52 Wn. App. 334, 345, 760 P.2d 368 (1988).

[11] To the extent this is due to Elise's alleged relocation to the East Coast, Ralph's remedy is to seek relief in the superior court based on the parties' changed circumstances.

reduced Ralph's imputed monthly income from $10,000 to $7,500. The court noted, however, that Ralph had submitted two income scenarios to the court, one in which he earned $10,000 per month and one in which he earned $7,500. The court did not impute $10,000 per month because Ralph had just started a new job, but it indicated he might still earn $10,000 a month through commissions, especially considering his earnings history.

And fourth, contrary to Ralph's assertions, the court did not abuse its discretion by imputing $500 in monthly income to Elise.[12] Ralph claims Elise's testimony supported imputation of $3,333 per month, or, alternatively, $1,200 per month based on 30 hours per week at minimum wage or $2,693 per month based on imputed income guidelines. The court found, however, that Elise had been out of the workforce while she raised the children and "has a need for education and job skills in order to become self-sufficient." Elise testified that she was taking online courses toward a nutritionist certificate and intended to earn a bachelor's degree after obtaining her certificate. She further testified the certificate program would take three hours a day and six months to complete. Ralph does not dispute that Elise takes the children to therapy three days a week. Given Elise's childcare responsibilities,[13] minimal skills, and daily school

---

[12] A court's imputation of income is reviewed for abuse of discretion. In re Marriage of Goodell, 130 Wn. App. 381, 388, 122 P.3d 929 (2005).

[13] All five children live with Elise. At the time of trial, they were between the ages of 10 and 15. All five children receive therapy and have special educational needs.

work, the court did not abuse its discretion in imputing an amount approximating 15 hours per week at minimum wage.

Ralph contends the court abused its discretion in requiring him to pay $40,000 of Elise's attorney fees. He claims the court abused its discretion in ruling that Elise had the financial need for, and he had the ability to pay, $40,000 in fees.[14] We disagree. Elise is raising all five children. At the time of trial she had minimal, if any, income.[15] Ralph, on the other hand, was working and capable of earning between $90,000 and $120,000 a year depending on commissions. The trial court did not abuse its discretion.

Ralph also claims the court "never states how the father's conduct increased the cost of litigation." The record belies this claim. Elise's counsel argued below that attorney fees were justified by the abusive use of conflict:

> I cite to you the husband and his attorney's emails from 259 to 283 . . . . The abusive use of conflict cases say he or she who has caused this case to mount up, to cause multiple hearings, to increase the cost, the Court has to look at that. . . . [Y]ou look at the amount of rhetoric in this case, it's from the husband. It's from his counsel. And I know that we all have to diligently represent our clients but this goes beyond the pale. It is ratcheted up. And that is

---

[14] We review a trial court's award of attorney fees for an abuse of discretion. In re Marriage of Obaidi, 154 Wn. App. 609, 617, 226 P.3d 787 (2010).

[15] Ralph claims in his statement of the case that Elise received a $145,000 gift from a church member to pay her fees. But he fails to support this claim with a citation to the record and does not mention the alleged gift anywhere in the argument section of his brief. We will not comb the record to find support for his argument. In re Estate of Lint, 135 Wn.2d 518, 532, 957 P.2d 755 (1998). We note, however, that while Ralph's counsel argued below that Elise "likely cannot or will not have to repay" the loan, he stopped short of saying she had no obligation whatsoever to repay it. (Emphasis added.)

why the request is made for $100,000. And it won't make her whole but this man needs to get a clue. . . . You have the unbelievable amount of litigation that this man has propagated, the incredible amount of emails, one motion alone, 153 emails for heaven's sake. That's outrageous. Without even saying what the basis for the motion—which was contempt—was. Doesn't even cite the particular order. It's just conclusory, conclusory, not factual. And I think that's a problem.

The court agreed, finding that "the sheer volume of declarations, emails, and other communications from petitioner related to this litigation has been an abusive use of conflict."

In short, even if we reached the merits of Ralph's financial arguments, we could not say, on this record, that the court abused its discretion.

Finally, Ralph claims there is an ambiguity in the record "as to whether the father must pay Maintenance for 48 months or 54 months." Because the court terminated his maintenance obligation within 48 months, this issue is moot.

Affirmed.

_Leach, J._

WE CONCUR:

_Dwyer, J._                    _Becker, J._